**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JOHN THOMPSON and LEIGH ANN THOMPSON, Individually and on Behalf of All Others Similarly Situated,** )<br>)<br>)<br>)<br> | |
| **Plaintiffs,** ) )| |
| **v.** ) )| **CIVIL ACTION NO. 5:14-CV-32 (MTT)** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** )<br>)<br>)<br>) | |
| **Defendant.** )<br>) | |

## ORDER

Before the Court is Plaintiffs John and Leigh Ann Thompson's consolidated motion for class certification and summary judgment.  (Doc. 19).  The Plaintiffs have moved to certify a class of all State Farm homeowners insurance policyholders in the state of Georgia and seek a declaratory judgment regarding the scope of their insurance coverage.  The Court **DENIES** the relief requested by the Plaintiffs in their motions because the Court lacks subject matter jurisdiction over their claim.

## I.    BACKGROUND

This case presents one of the latest efforts of policyholders to reap the benefit of court rulings that, absent an appropriate exclusion, casualty insurance policies provide coverage for diminution of value.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001).  The Plaintiffs own a townhouse in Smyrna, Georgia, that is insured by State Farm under a homeowners policy.  (Docs. 19-2 at ¶¶ 1-2; 24-3 at 12:5-16, 31:19-21).  The Plaintiffs' townhouse suffered water damage when

a pipe burst.  (Doc. 24-5 at 58:8-11).  State Farm paid for repairs to the damaged areas

of the townhouse.  (Docs. 24-5 at 69:12-18, 71:18-20; 25 at 11).  Plaintiff John

Thompson then called State Farm and asked if it would pay for "diminished value" to

their townhouse.  (Docs. 19-2 at ¶ 8; 24-3 at 90:15-91:24).  According to the Plaintiffs,

State Farm stated that it does not "provide such coverage."  (Doc. 19-2 at ¶ 9).  The

next day the Plaintiffs filed this lawsuit.  (Doc. 1).

It would be logical to assume that the pending motions arise from the Plaintiffs'

loss and the losses of other State Farm policyholders.  That is what State Farm

assumed.  When the Plaintiffs moved to certify a class under Fed. R. Civ. P. 23(b)(2),

State Farm argued they were attempting to "mask the fact that their real claim against

State Farm is one for individualized breach-of-contract damages, which cannot be

certified for class treatment under any subsection of Rule 23."  (Doc. 25 at 9-10).  State

Farm's lengthy brief attacks in great detail and on many fronts the Plaintiffs' efforts to

bring a claim "for money damages masquerading as equitable relief," including the

argument that the Plaintiffs "are attempting an end-run around *Dukes*[1] in the present

motions."  (Doc. 25 at 10).

But, as the Plaintiffs point out in their reply brief, the pending motions have

nothing to do with the damage to their townhouse.  Nor are they seeking declaratory

relief for policyholders who have suffered losses.  Rather, the Plaintiffs ask the Court to

certify a class of "[a]ll persons currently insured under homeowners insurance policies

issued by State Farm in the state of Georgia."  (Doc. 19-1 at 14).  For this class of

current policyholders, the Plaintiffs seek declarations that "State Farm's homeowners

---

[1] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

policy provides coverage for diminished value" and that "State Farm is required under its homeowners policy to assess for diminished value even if an insured does not make a specific request for diminished value."[2] (Doc. 19-1 at 10). They leave for another day their claims arising from the damage to their townhouse and their efforts to certify a class of policyholders who have suffered similar losses.

It is true, as the Plaintiffs acknowledged at oral argument, that they are trying to circumvent *Dukes*. The Plaintiffs recognize that claims for money damages, such as in any breach-of-contract class, are problematic after *Dukes*. To avoid that, the Plaintiffs want to certify a (b)(2) class that "does not seek monetary relief at all." (Doc. 29 at 13). At oral argument, the Court asked the Plaintiffs what happens to this class, assuming it is certified and summary judgment is granted. "It's the end of the case for the class, the equitable relief current policyholder class," the Plaintiffs responded. (Doc. 32 at 12:18-19). There is no need for a claims process or anything further. Rather, "it's just this declaration hanging out there that henceforth we now know that State Farm's policy covers diminished value." (Doc. 32 at 12:21-23).

While the Plaintiffs might have sidestepped *Dukes* by seeking only declaratory relief for a class that has suffered no loss, they have encountered another problem: whether this is a justiciable case or controversy. What the Plaintiffs seek is an opinion regarding State Farm's obligations *in the event* they ever have a claim for diminished

---

[2] State Farm began issuing an endorsement, "FE-5621 Diminution in Value Loss Restriction" ("FE-5621"), in all homeowners policies issued after November 1, 2013, and in all homeowners policy renewals issued after January 1, 2014. (Docs. 26 at ¶¶ 11-12; 19-9 at 2). The policy renewals issued after January 1, 2014, included a notice purporting to explain the effect of FE-5621. (Doc. 26 at ¶ 13). The Plaintiffs claim the notice is ambiguous and thus ineffective to reduce coverage under Georgia law. Therefore, the Plaintiffs also seek a declaration that "the FE-5621 endorsement does not alter coverage under State Farm's homeowners policy." (Doc. 19-1 at 10).

value.  But federal courts "do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us." *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982).  Thus, the Court must decide if this is "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

## II.    DISCUSSION

### A.  Case or Controversy

"[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing.").  "A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class." *Griffin*, 823 F.2d at 1482. Moreover, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* at 1483.

The Plaintiffs seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201,[3] which, "echoing the 'case or controversy' requirement of Article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an 'actual controversy.'" *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."). "Whether such a controversy exists is determined on a case-by-case basis." *Atlanta Gas Light v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).

The Supreme Court has recognized that its decisions "do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not." *MedImmune, Inc.*, 549 U.S. at 127. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory*, 756 F.2d at 1552. "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.*

---

[3] The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

The Plaintiffs bear the burden of establishing that the declaratory relief they seek satisfies the case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because they have also moved for summary judgment on their request for declaratory relief, they must do so "with the manner and degree of evidence required" by Fed. R. Civ. P. 56. *Id.*

**B. Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Id.* The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438). The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

### C. Analysis

The Plaintiffs argue a justiciable case exists because there is (1) a substantial controversy, (2) between parties having adverse legal interests, (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  (Doc. 33 at 1-2).  The Plaintiffs argue a substantial controversy exists because they disagree with State Farm about whether their policy provides coverage for diminished value and whether FE-5621 alters that coverage.[4]  (Docs. 29 at 6; 33 at 7; 26 at ¶ 10).  They argue

---

[4] It bears mention that State Farm seems to have created a controversy where none should exist.  It seems clear, after *Mabry* and *Royal Capital Development, LLC v. Maryland Casualty*

they have adverse legal interests with State Farm because this disagreement is "clearly [a] dispute[] as to 'legal rights.'" (Doc. 33 at 8). Finally, the Plaintiffs argue they face "a substantial risk of future harm" because State Farm's position creates the risk that it will deny any future claim of diminished value the Plaintiffs might have. (Doc. 33 at 8).

The Plaintiffs primarily rely on two California district court cases: *In re Adobe Systems, Inc. Privacy Litigation*, --- F. Supp. 3d ---, 2014 WL 4379916 (N.D. Cal.), and *Flintkote Co. v. General Accident Assurance Co. of Canada*, 2006 WL 1867538 (N.D. Cal.). In *In re Adobe*, the plaintiffs, Adobe customers whose personal information had been compromised as a result of a data breach, sought a declaratory judgment determining whether Adobe's security measures complied with its contractual obligations. 2014 WL 4379916, at *13. The district court concluded that the plaintiffs plausibly alleged they faced a substantial risk of future harm because they "remain[ed] at risk of attack"; listed several of Adobe's unreasonable security practices; and identified previous instances where Adobe had inadequately responded to security threats. *Id.* at *13 n.10.

In *Flintkote*, the plaintiff, a former asbestos manufacturer forced to seek bankruptcy protection because of asbestos-related litigation, properly sought a

---

*Co.*, 291 Ga. 262, 728 S.E.2d 234 (2012), that, absent an appropriate exclusion, casualty policies provide coverage for diminished value to the extent necessary to compensate the insured for his loss. Indeed, this is the position taken by another insurer in a similar case pending before the Court. That insurer argues, in response to a policyholder's declaratory judgment action, that there is no continuing controversy as required to maintain a declaratory judgment action because the Georgia Supreme Court has clearly held diminished value is an element in determining damages to real property. *CHIS LLC v. Liberty Mut. Holding Co.*, 5:14-cv-277, Doc. 27 at 5. State Farm, on the other hand, somehow sees a way to avoid the seemingly clear holdings in *Mabry* and *Royal Capital*. While acknowledging those decisions, it still contends that its policies have never covered diminished value. This is why the Plaintiffs argue the notice accompanying State Farm's FE-5621 endorsement is ineffective to reduce coverage: State Farm does not purport to exclude coverage for diminished value moving forward, but purports to "emphasize" and remind its policyholders that, notwithstanding *Royal Capital*, such coverage never existed. (Docs. 19-1 at 34; 19-10 at 2).

declaration that two of its insurance companies were obligated to defend and indemnify it against pending and future asbestos-related lawsuits.  2006 WL 1867538, at *2.  The court distinguished the dispute over future asbestos-related lawsuits from disputes "that were unlikely to materialize at all," noting that the plaintiff had "already tendered many cases to defendants for defense and indemnification, and will continue to do so in the future as the asbestos-related claims against plaintiff continue to be filed."  *Id.*  The court also noted that the nature of relief sought "is categorical—imposing a duty to defend and indemnify plaintiff in asbestos-related lawsuits," which "will be filed in the future with a high degree of certainty."  *Id.* at *5.

The Plaintiffs argue they are like the plaintiffs in *In re Adobe* because they too face a significant risk of harm unless the Court "orders State Farm to stop" their ongoing practice of denying diminished value claims.  (Doc. 33 at 4).  They argue such a declaration would not be advisory because, like the declaration in *In re Adobe*, it "would have a real impact on the behavior of State Farm."  (Doc. 33 at 4-5).  The Plaintiffs argue State Farm is like the defendants in *Flintkote* because State Farm previously denied the Plaintiffs' claim for diminished value and has an established practice of denying such claims.  Further, the declaration they seek is similar to that sought in *Flintkote*: it is "categorical in nature—imposing a duty to provide coverage for diminished value for all covered losses," such that there "is no concern about delving into the details of particular … claims."  (Doc. 33 at 6).

Here, the Plaintiffs seek a declaration regarding State Farm's obligations *in the event* their townhouse suffers damage and they have such a claim.  While State Farm's position on whether its policy covers diminished value may be firm, albeit arguably

ill-advised, it will result in injury only if the Plaintiffs' townhouse suffers damage in the

future.  In *In re Adobe*, on the other hand, the plaintiffs argued that Adobe's present and

ongoing failure to protect their data was putting them at risk.  *Flintkote* is distinguishable

for the same reason.  There, the plaintiff not only had been sued but was facing suit "in

the future with a high degree of certainty."  *Flintkote*, 2006 WL 1867538, at *5.

Because the Plaintiffs' injury is contingent upon their townhouse suffering

damage, "the practical likelihood that the contingenc[y] will occur and that the

controversy is a real one [is] decisive in determining whether an actual controversy

exists."  *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1569 (11th Cir.

1995) (citation and internal quotation marks omitted).  Although the Plaintiffs argue

"there is a 'practical likelihood' that [they] will submit a future insurance claim," they cite

no basis, much less evidence, for this argument.  (Doc. 33 at 9).  In effect, the Plaintiffs

argue that any disagreement over the meaning of an insurance policy is sufficient to

invoke a federal court's jurisdiction.  This is clearly not the case.[5]

For the Plaintiffs to invoke the Court's authority to adjudicate their dispute,

"[t]here must be a substantial likelihood that [they] will suffer future injury: a 'perhaps' or

'maybe' chance is not enough."  *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d

1342, 1347 (11th Cir. 1999) (citation omitted); *see also Strickland v. Alexander*, 772

F.3d 876, 883 (11th Cir. 2014) ("[A] plaintiff seeking declaratory or injunctive relief must

allege and ultimately prove 'a real and immediate—as opposed to a merely hypothetical

---

[5] The stretch that the Plaintiffs make as they try to prove that they likely will suffer a loss is
illustrated by their argument that their purchase of a homeowners policy establishes they likely
will suffer a loss because they "would not need to buy insurance if this practical likelihood did
not exist."  (Doc. 33 at 9).  While we all buy insurance to protect us from risk, buying insurance
does not make it more likely that you will experience that risk.  Many lawyers maintain that risk
seems to look for the gap or wait for the lapse in coverage.

or conjectural—threat of *future* injury.'" (citation omitted)).  The mere possibility that the Plaintiffs' townhouse may suffer damage in the future is "simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court."  *O'Shea v. Littleton*, 414 U.S. 488, 498 (1974); *see also Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) ("There is at most a 'perhaps' or 'maybe' chance that the arbitration agreement will be enforced against these plaintiffs in the future, and that is not enough to give them standing to challenge its enforceability.").  Nor can the Plaintiffs rely solely on the prior damage to their townhouse and State Farm's alleged denial of their claim for diminished value to establish that they face a substantial risk of future harm.  *See Malowney*, 193 F.3d at 1348 ("Injury in the past … does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").  Without any evidence suggesting that the Plaintiffs will suffer future injury, the Court lacks jurisdiction to adjudicate their dispute.  Therefore, their motion for class certification must be denied.  *Griffin*, 823 F.2d at 1482-83; *Hines v. Widnall*, 334 F.3d 1253, 1257 (11th Cir. 2003).

### III.    CONCLUSION

Because the Court lacks subject matter jurisdiction over the Plaintiffs' claim for a declaratory judgment, the Court **DENIES** the relief requested in their consolidated motion for class certification and summary judgment (Doc. 19).

**SO ORDERED**, this 14th day of May, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT