**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JOHN THOMPSON and LEIGH ANN THOMPSON, Individually and on Behalf of All Others Similarly Situated,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**STATE FARM FIRE AND CASUALTY COMPANY,** )<br>)<br>)<br>**Defendant.** )<br>_____ ) | **CIVIL ACTION NO. 5:14-CV-32 (MTT)** |

## <u>ORDER</u>

Plaintiffs John and Leigh Ann Thompson filed this putative class action on behalf of themselves and other similarly situated potential class members.  The Plaintiffs seek certification under Rule 23(b)(3) as to their breach of contract claims against State Farm arising from its breach of two separate duties purportedly created by its homeowners policy: (1) the duty to assess for diminished value and (2) the duty to pay for diminished value where it is found.  Alternatively, the Plaintiffs seek certification under Rule 23(c)(4) on the issues of (1) whether State Farm breached the homeowners policy and (2) whether the Plaintiffs and the class members have a right to complain about the breach.

### I.    BACKGROUND

The Plaintiffs own a townhouse in Smyrna, Georgia, that is insured by State Farm under a homeowners policy.  (Docs. 6 at ¶ 1; 7 at ¶ 1).  On September 20, 2013, the Plaintiffs' townhouse suffered water damage when a pipe burst.  (Docs. 6 at ¶ 13; 7 at ¶ 13; 24-5 at 58:8-11).  State Farm paid for repairs to the damaged areas of the

townhouse.  (Docs. 6 at ¶ 14; 7 at ¶ 14; 24-5 at 69:12-18, 71:18-20).  On January 21,

2014, Plaintiff John Thompson called State Farm and asked if it would pay for

"diminished value" to their townhouse.  (Doc. 24-3 at 90:15-91:24).  According to the

Plaintiffs, State Farm stated that it does not provide such coverage.  (Docs. 41-1 at 11;

41-5 at 27; 24-3 at 90:15-91:24).  The next day the Plaintiffs filed this lawsuit.  (Doc. 1).

The Plaintiffs' homeowners policy provides that State Farm "insure[s] for

accidental direct physical loss to the property."  (Docs. 41-1 at 13; 41-7 at 34).  The

Plaintiffs argue that this language imposes upon State Farm the duty to assess and the

duty to pay for diminished value.  (Doc. 41-1 at 13).  Because State Farm uniformly

denies coverage for diminished value under its homeowners policies, which are "similar

in all relevant respects," the Plaintiffs argue that their case is well suited for class

treatment.  (Doc. 41-1 at 10-12).

The Plaintiffs primarily rely on two Georgia cases to establish that State Farm's

homeowners policy imposes duties to assess and to pay upon State Farm: *State Farm*

*Mutual Automobile Insurance Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001) and

*Royal Capital Development, LLC v. Maryland Casualty Co.*, 291 Ga. 262, 728 S.E.2d

234 (2012).  The Court will first consider what these cases do and do not say about an

insurer's obligation to assess and pay for diminished value.

**A. *State Farm Mutual Automobile Insurance Co. v. Mabry***

In *Mabry*, a Georgia trial court certified a class consisting of "all current insureds

under State Farm policies issued in Georgia" and granted declaratory and injunctive

relief to that class.  274 Ga. at 498, 556 S.E.2d at 116.  The relevant issues were

"whether Georgia law, as applied to the contract at issue, requires insurers to assess

vehicles presented with first-party physical damages claims for diminution in value and, if found, pay it; and, if so, whether State Farm has sought to avoid that obligation." *Id.* at 499, 556 S.E.2d at 117.  To resolve these issues, the trial court answered three questions.

First, the trial court considered "whether the fact of physical damage resulting from an event covered by the policy reduces the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function." *Id.* at 502, 556 S.E.2d at 119.  The Georgia Supreme Court determined that this was a factual question and upheld the trial court's findings "that there is a potential for a diminution in value loss in every event of loss, and that diminution in value can occur even when a vehicle is repaired properly." *Id.* at 503, 556 S.E.2d at 119.  In making these findings, the trial court primarily relied upon documents and testimony from State Farm, including "documents from State Farm acknowledg[ing] that there is a common perception that a wrecked vehicle is worth less simply because it has been wrecked." *Id.*

It is important to emphasize exactly what the trial court did when it made this factual finding.  The court did not find that in every case, or even in most cases, that a vehicle's value necessarily decreased as the result of physical damage to the vehicle. Rather, as the Georgia Supreme Court made clear when it affirmed the trial court, the finding simply was that "the fact of physical damage resulting from an event covered by the policy *can* reduce the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function." *Id.* at 509, 556 S.E.2d at 123 (emphasis added). From the Georgia Supreme Court's opinion, it seemed that the trial court made this factual finding in response to State Farm's argument that if "physical damage has been

properly repaired, … there is no objectively discernible diminution in value … ."  *Id.* at

502, 556 S.E.2d at 119.  Although the Georgia Supreme Court did not directly say so, it

appears this factual finding was a necessary predicate to the next issues addressed by

the trial court.  That is, because there *possibly* could be diminished value, the trial court

addressed the issues of whether State Farm's policy covered this potential loss and

whether State Farm had a duty to assess for such a loss when the insured did not

specifically claim that the vehicle has lost value.

The second issue—"whether State Farm is required to pay for diminution in value

as a part of its physical damage coverage"—was "a matter of contract construction" and

thus a question of law.  *Id.* at 503, 556 S.E.2d at 119.  The physical damage coverage

in State Farm's policies provided that it would "pay for loss to your car."  *Id.* at 502, 556

S.E.2d at 118.  After reviewing 75 years of Georgia case law, the Georgia Supreme

Court concluded that "Georgia … has been consistent in interpreting the physical

damage coverage of automobile insurance policies to require that the insured be made

whole, basing the measure of damages on the value of the vehicle."  *Id.* at 508, 556

S.E.2d at 122.  Thus, the Georgia Supreme Court affirmed the trial court and held that

"State Farm is obligated to pay for diminution in value when it occurs" and that

"[r]ecognition of diminution in value as an element of loss to be recovered on the same

basis as other elements of loss merely reflects economic reality."  *Id.*

The third issue—"whether State Farm is required to assess for diminution in

value without a specific claim for that element of loss"—was also "a matter of the

contract between the parties, interpretation of which is a question of law."  *Id.* at 508,

556 S.E.2d at 123.  The trial court determined that the policy "require[d] State Farm, not

the insured, to determine all the elements of loss in each claim." *Id.* at 509, 556 S.E.2d at 123.  The policy at issue contained "a provision outlining the duties of the insured in reporting a claim," which included reporting the "accident or loss," protecting the damaged vehicle, showing the insurer the damage, and providing all invoices.  *Id.* at 508, 556 S.E.2d at 123.  The policy, however, did not require "the insured to assert a right to recover any particular element of damage." *Id.*  The Georgia Supreme Court held that the trial court's construction of the policy was "consistent with the language of the contract with regard to the relative duties of the parties to that contract." *Id.* at 509, 556 S.E.2d at 123.  Specifically, the Georgia Supreme Court held that "[i]f the policy does not require the insured to claim separately such items as damage to tires or damage to bodywork, it stands to reason that the policy does not require a separate claim for diminution in value." *Id.* at 508, 556 S.E.2d at 123.  Accordingly, the trial court correctly determined that State Farm was obligated to assess diminution in value "along with the elements of physical damage when a policyholder makes a general claim of loss." *Id.* at 509, 556 S.E.2d at 123.

The Georgia Supreme Court also upheld the injunctive relief ordered by the trial court.  The trial court ordered, among other things, that State Farm "evaluate first party physical damage claims for the presence of diminution in value by an appropriate methodology and procedure, and … offer to pay such diminution in value if it determines it has occurred or … deny the presence of diminution in value and so advise its insureds." (Doc. 68-1 at 24).  The Georgia Supreme Court held that the trial court did not abuse its discretion when it ordered State Farm to assess for diminished value.  Indeed, "[r]equiring the development of an appropriate methodology was necessary

since the undisputed evidence shows that State Farm had no such methodology in use." *Mabry*, 274 Ga. at 510, 556 S.E.2d at 124.  Moreover, "[p]ermitting State Farm to develop its own methodology rather than imposing one is the least oppressive means of accomplishing that necessary task." *Id.*

### B.  *Royal Capital Development, LLC v. Maryland Casualty Co.*

In *Royal Capital*, the Georgia Supreme Court held that *Mabry* is not limited to automobile insurance policies.  Specifically, the Georgia Supreme Court answered the following certified question from the Eleventh Circuit: Does "an insurance contract providing coverage for 'direct physical loss of or damage to' a building" require compensation "for the diminution in value of the property resulting from stigma due to its having been physically damaged?"  *Royal Capital*, 291 Ga. at 262, 728 S.E.2d at 235.  The Georgia Supreme Court answered the question in the affirmative and held that the *Mabry* rule "is not limited by the type of property insured, but rather speaks generally to the measure of damages an insurer is obligated to pay."  *Id.* at 263, 728 S.E.2d at 235.  The Georgia Supreme Court reiterated the "long-standing contract interpretation rule in Georgia" that it followed in *Mabry*: "[W]here '[an] insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value.'"  *Id.* at 267, 728 S.E.2d at 238 (second alteration in original) (quoting *Mabry*, 274 Ga. at 508, 556 S.E.2d at 122).

## II.    DISCUSSION

Although the Plaintiffs' amended complaint seeks certification of a single, undivided "Breach of Contract Class," their motion to certify divides the class into two

subclasses, defined as:

> All persons formerly or currently insured under homeowners insurance policies issued by State Farm that provide coverage for property located in Georgia who, from January 22, 2013, to the present, presented first-party claims arising from direct physical losses to their properties as a result of water damage, for which State Farm provided coverage, wherein diminution of value was not assessed for or paid in connection with said claims.
>
> All persons formerly or currently insured under homeowners insurance policies issued by State Farm that provide coverage for property located in Georgia who, from January 22, 2008, to January 21, 2013, presented first-party claims arising from direct physical losses to their properties as a result of water damage, for which State Farm provided coverage, wherein diminution of value was not assessed for or paid in connection with said claims.

(Docs. 6 at ¶ 29.B; 41-1 at 14).   The two subclasses are identical in every respect, except that one is for insureds who presented claims before January 22, 2013, and the other is for those who presented their claims on or after January 22, 2013.   The apparent reason for the distinction is a one year contractual statute of limitations in State Farm's policy.   It applies, if at all, only to the subclass of older claims.

The Plaintiffs do not say why they want to subdivide the class or how they can do so without amending their complaint.   State Farm raises no objection to the Plaintiffs' effort to subdivide the class and, indeed, doesn't mention at all the subdivided classes other than acknowledging that the Plaintiffs seek certification of a divided class.   Its arguments against certification do not distinguish between the two subclasses; they apply equally to both.   Most pertinently, State Farm does not challenge the Plaintiffs' standing, typicality, or adequacy of representation with regard to the statute of limitations defense.

## A. Class Certification Standard

Fed. R. Civ. P. 23 governs the certification and management of class actions in

federal courts.  To maintain a class action, Rule 23(a) requires the putative class to satisfy four prerequisites, and the class action may proceed only if it is one of the three types identified in Rule 23(b).  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (citation omitted).  A plaintiff must also establish the implied requirement of Rule 23 that "the proposed class [be] 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). The burden of establishing the propriety of class certification lies with the moving party. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)).  The moving party "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The Court must conduct a "rigorous analysis" to ensure Rule 23's prerequisites are satisfied prior to certifying a class.  *Vega*, 564 F.3d at 1266 (citations omitted). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  *Id.* (internal quotation marks and citations omitted); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Specifically, Rule 23(a) requires a plaintiff to show:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "These four prerequisites of Rule 23(a) are commonly referred to as 'numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims.'"  *Valley Drug*, 350 F.3d at 1188 (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000)).

The Plaintiffs are pursuing certification under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Ascertainability

The Eleventh Circuit has stated that "a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way."  *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015).  "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'"  *Id.* (quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)).  Moreover, "[a] plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also

establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Id.* at 948.

The Plaintiffs contend that State Farm's records can be used to identify the class members because State Farm uses a "Cause of Loss Code" to categorize claims by specific type of event. (Doc. 41-1 at 15). State Farm does not dispute this, although it argues that this coding category would not include homes that suffered water damage as a result of some other principal cause, such as damage from water being used to extinguish a fire. (Doc. 56 at 35). The Plaintiffs respond that the proposed subclasses will be limited to claims that fall within the cause of loss code for water damage. Clearly, those claims can be easily ascertained from State Farm's records.

State Farm nevertheless argues that a claim-by-claim review will be necessary to ascertain the subclasses because it would have to be determined whether State Farm had assessed for or paid diminished value in a particular claim. (Doc. 56 at 35). State Farm argues this would be particularly difficult "given the ambiguity in the term 'diminished value' and its overlap with adequacy of repair." *Id.* This argument lacks any merit. First, State Farm has made clear that it does not assess for or pay diminished value; it claims that its policy does not cover diminished value, notwithstanding *Mabry* and *Royal Capital*. (Doc. 24-1 at 43:2-44:10, 59:1-64:13, 109:2-111:17). Thus, there is no need for State Farm to search its records for claims where it has paid diminished value. Second, there is no ambiguity, at least legally, with regard to the term diminished value and it does not "overlap" with adequacy of repair. As Georgia courts have made clear, diminished value is the decrease in the value of the property as a result of stigma even though the property has been fully repaired to its prior form and function. *Mabry*,

274 Ga. at 502, 556 S.E.2d at 119; *Royal Capital*, 291 Ga. 262, 728 S.E.2d 234.

Accordingly, the Plaintiffs have established ascertainability.

### 2. Numerosity

State Farm does not dispute that the Plaintiffs can establish numerosity. As an example of the size of the class, the Plaintiffs have presented evidence that from January 1, 2012 to April 28, 2014, State Farm received approximately 23,789 covered claims for water damage. (Doc. 41-1 at 17). Accordingly, the Plaintiffs have established numerosity.

### 3. Commonality and Predominance

Rule 23(a)(2) requires "questions of law or fact common to the class." Rule 23(b)(3) requires the Plaintiffs to establish predominance, meaning that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Although commonality and predominance are separate issues, the parties' arguments regarding commonality and predominance almost completely overlap. In particular, State Farm raises the same arguments in response to the Plaintiffs' contentions that they have established commonality and predominance. Accordingly, the Court addresses both issues here.

To satisfy commonality, the Plaintiffs must show the putative class members "have suffered the same injury." *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, class certification is not appropriate merely because the plaintiffs allege all members of the class suffered a violation of the same provision of law. *Id.* Rather, "[t]heir claims must depend upon a common contention … of such a nature that it is capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do." *Id.* at 2556 (citation omitted) (second and third alteration in original).

"Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Babineaus v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (citation omitted). "On the other hand, common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* (alteration in original) (citation omitted). Predominance is not present and certification is not appropriate if each class member must submit a substantial amount of individualized proof to establish most or all elements of their claims. *Id.* (citation omitted). Thus, the Court must consider the claims, defenses, relevant facts, and substantive law to determine whether resolution of the classwide issues will further each class member's claims. *Id.* (citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." (citation omitted)).

The Plaintiffs' failure to pay and failure to assess claims are both based on State Farm's alleged breaches of its homeowners policy, and commonality and predominance

must be evaluated in the context of the elements of the Plaintiffs' claims. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 320, 707 S.E.2d 555, 559 (2011).

### i. Failure to Pay

The Plaintiffs argue that State Farm breached class members' homeowners policies by failing to pay for diminished value. To prove breach, the Plaintiffs must establish that State Farm had a duty to pay for such a loss and then failed to pay it. Because the matter of contract construction is a question of law, *Mabry*, 274 Ga. at 502, 556 S.E.2d at 119, and the interpretation of the standard form policy at issue will not require individualized inquiries as to each contract, Doc. 24-1 at 111:13-113:24, whether State Farm's homeowners policies provide coverage for diminished value is "susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").

If this were a declaratory judgment action seeking to determine whether State Farm's policy provided coverage for diminished value claims, the Plaintiffs would clearly have established commonality. But it is not a declaratory judgment action; it is a breach of contract action for failure to pay diminished value claims. Perhaps recognizing that simply establishing there exists a common issue of coverage may not be sufficient to

establish commonality under these circumstances, the Plaintiffs argue that whether State Farm breached its duty to pay is a common issue that can be resolved without the need for inquiry into the facts of individual claims.  Specifically, the Plaintiffs argue that the class members "have all been subjected to the same treatment by State Farm [and thus] have all 'suffered the same injury.'"  (Doc. 41-1 at 18) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157)).  They base this argument on the fact that State Farm has always denied that its policy provides coverage for diminished value.  Because it has always denied coverage, it follows that it has never paid its insureds for diminished value and all that is subject to generalized proof.[1]  Thus, breach of the contract can be established without inquiry into the facts of a particular claim.

There is an obvious flaw in this argument—it assumes that every member of the classes suffered diminished value and thus that State Farm breached the policies of all class members.  But if a class member's property did not decrease in value after proper repairs, then State Farm would not have breached its duty to pay, and thus that class member suffered no breach.  Recognizing this flaw, State Farm argues that neither commonality nor predominance is present because "there is no way to determine whether 'post-repair diminished value' existed in a given case without an individualized inquiry."  (Docs. 56 at 22; 74 at 263:12-16).  Grudgingly acknowledging *Royal Capital*'s holding that diminished value is a covered loss, State Farm seizes on the observation by the court in *Royal Capital* that it would be unusual that the value of property would decrease after appropriate repairs.  (Doc. 56 at 15).

Indeed, even the Plaintiffs do not contend that there is diminished value in every

---

[1] Of course this argument is a bit of a tautology.  If State Farm has always denied that its policy covered diminished value, obviously it has always denied claims for diminished value.

loss.[2]  (Docs. 52 at 16; 74 at 7:16-21).  Rather, they deal with this argument by

recharacterizing it.  They contend that "State Farm identifies no relevant issue other

than diminution-in-value *damages* that may require individualized determinations."

(Doc. 65 at 9-10, 17) (emphasis added).  Thus, the Plaintiffs do not deny that it may be

necessary to allow State Farm to engage in individual loss inquiries, they just say this

goes to the issue of damages rather than breach and so "is irrelevant to commonality."

(Doc. 65 at 9).  They also cite well-established authority that the need for individual

inquiries regarding damages does not preclude a finding of predominance when "the

issues of liability are genuinely common issues."  (Doc. 65 at 19-20) (quoting *Butler v.*

*Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)).  Although State Farm

certainly contends that quantifying any diminished value loss would require

individualized assessments, they clearly argue first that the issue of breach turns on

whether the value of the property has decreased.  If it did not, there is no breach.

Perhaps the Plaintiffs struggle with this issue because they seem to plan to use

the same evidence—expert testimony based on survey results—to prove both that there

is diminished value and the amount of that damage.  (Docs. 74 at 237:10-25, 288:10-15;

75 at 18-19).  Maybe it can be said that quantifying the diminished value also

establishes the existence of diminished value and thus establishes breach.  But that

---

[2] Although the Plaintiffs say this, the mass appraisal methodology employed by their expert necessarily concludes that every home in a particular loss scenario suffers diminished value, regardless of the circumstances of a particular loss.  (Doc. 74 at 238:19-239:19).  Simply put, the expert conducts a survey to determine what a potential buyer would pay—stated as a percentage of fair market value, e.g., 5%, 75%, 135%—for a house after a specific type of loss, e.g., a leaking pipe.  (Doc. 52 at 16-18).  He averages the responses to determine what the percentage of decrease (or, theoretically, increase) in value losses within that scenario will experience.  Of course, every scenario he has run so far results in diminished value even though a substantial number of respondents said they would pay more than fair market value for a properly repaired house.  (Doc. 74 at 91:8-92:5, 238:5-18).  Thus, while the Plaintiffs are careful to note that they are not claiming diminished value exists in each loss, their expert is not quite on the same page.  As a result of the rulings in this order, it is not necessary to address State Farm's *Daubert* challenges to this expert testimony.

does not change the fact that the issue, at least at this juncture, is not one of damages but rather one of breach.  On this issue, the Plaintiffs can draw no comfort from the principle that individualized damages assessments do not preclude certification.

Nor does the fact that the Plaintiffs are confident that their expert can prove the existence of diminished value without an individualized assessment resolve the issue. State Farm is entitled to present its defenses,[3] and the Plaintiffs cite no evidence or authority establishing that State Farm cannot adduce evidence in particular claims to demonstrate that there is no diminished value with regard to that particular claim and thus no breach.  Again, the Plaintiffs as much as acknowledge State Farm's right to do this; they simply characterize that as an issue of damages which does not preclude class certification.  (Doc. 65 at 19 n.11).  But State Farm can avoid *liability*, not just an award of damages, by showing that an individual property did not suffer diminished value.  The Plaintiffs' willingness to use a common methodology to establish this element of their claim does not convert an otherwise highly loss-specific factual issue into one that can be appropriately determined on a class-wide basis.  *See, e.g.*, *Allapattah*, 333 F.3d at 1261.

In sum, the Plaintiffs contend that the determination of whether State Farm had a duty to pay diminished value and, if so, whether it breached that duty present common questions, and because all class members "suffered the same injury," that is, a breach of their policies, they have established commonality.  But simply establishing a company-wide policy of not paying diminished value does not alone establish a breach of any class member's policy.  There is only a breach if in fact a class member's

---

[3] "The Rules Enabling Act, 28 U.S.C. § 2072—and due process—prevents the use of class actions from abridging the substantive rights of any party."  *Sacred Heart*, 601 F.3d at 1176.

property decreased in value notwithstanding full repair.  That necessary determination of whether each class member suffered diminished value renders breach anything but a common question.[4]

Neither party has cited, and the Court has not found, authority providing guidance on whether the acknowledged common issue of coverage and State Farm's alleged common practice of denying claims for diminished value, which again is nothing more than a tautology, is sufficient to establish commonality.[5]  True, the Supreme Court has said that a single common issue is sufficient, but "[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores*, 131 S. Ct. at 2551 (citation omitted). Whether State Farm's homeowners policies provide coverage for diminished value is clearly "central to the validity of each one of the [class member's] claims."  *Id*.  But the common issue of coverage is a kind of predicate issue, a preliminary issue that sets up the central issue of breach.  Does resolving that common predicate issue drive the resolution of the case when the central issue of breach, i.e., liability, will involve a determination of whether each class member, in fact, saw his property decrease in value after proper repairs?  In the end, the Court elects not to tackle commonality

---

[4] Because the element of breach in the Plaintiffs' failure to pay claim cannot be determined on a class-wide basis, the Court denies the Plaintiffs' request for certification under Rule 23(c)(4) "on the issues of (1) whether State Farm breached the homeowners policy and (2) whether the Plaintiffs and the Class members have a right to complain about the breach."  (Doc. 41-1 at 10).

[5] It would be ironic if it is.  In other putative class actions pending before the Court involving this same issue, insurers have admitted their policies cover diminished value.  Given the holdings of *Mabry* and *Royal Capital*, this concession is not a great sacrifice.  But because coverage is not an issue in those cases, does that mean commonality is not present?  Just because State Farm has chosen to dispute coverage, while other insurers have conceded coverage but dispute breach, does that mean commonality is present here and not in those other actions?

further because, for the same reasons that make the issue difficult to resolve, the issue of predominance is easily resolved.

Again, even after adjudicating the issue of coverage, significant questions concerning State Farm's liability would remain for each class member.  *See Vega*, 564 F.3d at 1274.  Indeed, the most significant and difficult issues remain.  As discussed, the issue of breach is not a question common to the class.  To prove breach, class members must present proof that their property in fact suffered diminished value.  While the Plaintiffs may be confident, perhaps overly so, that they can do this with mass appraisals, even they effectively admit[6] State Farm is entitled to present evidence that it did not breach the contract because an insured property did not decrease in value after proper repairs.  And State Farm can do this for each insured in the class.  Accordingly, even assuming that the issue of coverage is sufficient to establish commonality, it does not predominate over the individualized issues of fact that must be resolved.  *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264-67 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000) ("[M]ost, if not all, of the plaintiffs' claims will stand or fall, not on the answer to [a common] question …, but on the resolution of … highly case-specific factual issues." (internal quotation marks and citation omitted)).  Therefore, the absence of predominance precludes certification of the Plaintiffs' failure to pay claim under Rule 23(b)(3).

### ii.  Failure to Assess

In their failure to assess claim, the Plaintiffs contend that State Farm's policy

---

[6] Again, they "admit" this by acknowledging State Farm can present individualized evidence on the issue of damages.

imposes a duty to assess for diminished value, that State Farm breached this duty because by its own admission it does not assess for diminished value, and that the class members are thus entitled to recover damages.  The Plaintiffs' failure to assess claim seems straight forward.  They say there is at least the potential for diminished value even though the property has been properly repaired.  Certainly, the Plaintiffs have offered proof of this potential, and State Farm now essentially concedes the point.  (Doc. 74 at 278:1-20).  Citing *Mabry*, the Plaintiffs argue that the potential for diminished value triggers State Farm's duty to assess for it.  (Doc. 75 at 3-5).  Because State Farm admits that it has never assessed for diminished value, the Plaintiffs say they can demonstrate a breach without the need for any individualized proof.[7]

State Farm's main argument in response does not address commonality or predominance.[8]  Rather, State Farm argues that the Plaintiffs cannot "split" or "parse" their breach of contract claim to assert a claim for breach of the duty to assess.  (Doc. 56 at 18-19, 23-24).  In other words, State Farm goes beyond Rule 23 to the merits of the claim.[9]  For reasons unclear, State Farm argues that the Plaintiffs' failure to assess claim is somehow a "quasi-tort claim."  (Doc. 56 at 19).  State Farm argues that

---

[7] As the Plaintiffs also point out in their post-hearing brief, it now appears that State Farm may be willing to acknowledge that it does have a duty to assess for diminished value.  (Docs. 75 at 15-16; 74 at 278:23-279:7, 280:2-7).

[8] State Farm also raises a standing argument, contending that a "claim about State Farm's alleged duties if and when Plaintiffs make another insurance claim is similarly outside the jurisdiction conferred by Article III."  (Doc. 56 at 19).  The Plaintiffs are not seeking a determination of State Farm's duties about some future claim; they are pursuing a claim for breach of the duty to assess based on claims that were submitted to State Farm.

[9] The Court agrees it is not necessarily inappropriate to address merits questions in the context of a class certification determination.  *See Amgen*, 133 S. Ct. at 1194-95; *Cox v. Cmty. Loans of Am. Inc.*, 625 F. App'x 453, 455 (11th Cir. 2015) ("For if there is no implied private right of action for violations of the MLA, then there are no common issues of law appropriate for adjudication on a class-wide basis.").  The Court addresses State Farm's attack on the merits of the Plaintiffs' failure to assess claim here because State Farm raises it in response to the Plaintiffs' contentions that they have established commonality and predominance.

*Kartman v. State Farm Mutual Automobile Insurance Co.*, 634 F.3d 883 (7th Cir. 2011) somehow changed the Georgia law established by *Mabry*. (Doc. 74 at 290:8-16). In *Kartman*, the Seventh Circuit, addressing the merits of the plaintiffs' claim rather than Rule 23 issues, determined whether Indiana law created "an independently actionable duty to examine all hail-damaged roofs pursuant to a uniform and objective standard." 634 F.3d at 889-91. *Kartman* has nothing to do with Georgia law, and no further discussion is necessary.

Try as it might, State Farm simply cannot work around *Mabry*. *Mabry* holds that insurance companies have a duty to assess for diminished value and that when they fail to perform that assessment, their insureds have a remedy. 274 Ga. at 508-09, 556 S.E.2d at 123. State Farm attempts to distinguish *Mabry* factually by noting that the trial court in *Mabry* made a factual finding that there is the potential for diminished value even after proper repairs have been made. True, but as discussed, there is ample evidence in the record in this case that there is the potential for diminished value. Even State Farm's expert and counsel acknowledge as much. (Doc. 74 at 257:11-16, 258:5-18, 261:12-20, 278:5-20). And, in any event, State Farm does not argue that such a finding—to the extent it is required for the Plaintiffs to prevail on the merits of their claim—cannot be made on a class-wide basis.

State Farm's final argument purportedly addressing commonality and predominance is a little difficult to follow. It argues that neither commonality nor predominance is present because there is "no basis for a claim of breach of contract[] if no post-repair diminished value existed." (Doc. 56 at 19-20, 23-24). State Farm appears to make one of two subtly different points. First, State Farm may be arguing

that the Plaintiffs' claim fails on the merits because the mere failure to assess is not a breach of the contract; breach can only be established if an insured suffered diminished value and State Farm refused to pay for that diminished value.  Or State Farm may be arguing that the Plaintiffs must establish the existence of diminished value to prove a breach of the duty to assess and, as discussed, proving diminished value requires individualized assessments, precluding a finding of commonality or predominance. Whatever State Farm's precise argument is, it has nothing to do with the Plaintiffs' failure to assess claim.  Again, as *Mabry* makes clear, breach in the Plaintiffs' failure to assess claim is established by the failure to assess, not by diminished value.

In sum, State Farm makes no credible effort to show that individualized issues or facts preclude a finding that the Plaintiffs have established commonality and predominance for their failure to assess claim.[10]  Rather, it mostly argues that the Plaintiffs cannot separately pursue a duty to assess claim.  *Mabry* holds otherwise. Whether State Farm's policies impose a duty to assess for diminished value, whether it breached that obligation, and whether class members are entitled to recover damages are all questions common to the class and subject to generalized proof.  *See Allapattah*, 333 F.3d at 1261.  The measure of damages, which the Plaintiffs intend to calculate by showing the cost of performing an assessment, is also a question common to the class. The Plaintiffs have established that these common questions predominate over "any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Accordingly, the Plaintiffs have established commonality and predominance in their failure to assess

---

[10] State Farm does not contend that its potential statute of limitations defense and its contention that some policies exclude coverage for diminished value claims precludes commonality and predominance. For a discussion of these defenses, see the discussion in Part II.4 below.  On the record now before the Court, it does not appear that the resolution of these defenses will require individualized inquiries.

claim.

### 4. Typicality and Adequacy of Representation

The typicality requirement for the failure to assess claim is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Vega*, 564 F.3d at 1275 (alteration in original) (quoting *Busby*, 513 F.3d at 1322).

Under the final Rule 23(a) requirement, the class representatives must show they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement applies to both the named plaintiffs and their counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The adequacy prerequisite "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby*, 513 F.3d at 1323 (quoting *Valley Drug*, 350 F.3d at 1189).

The Plaintiffs argue that their claims are typical of those of the class members because they all require the interpretation of the same form contract, they all assert a breach of contract claim, and they all have suffered the same injuries as a result of State Farm's breach. (Doc. 41-1 at 19). The Plaintiffs argue they will fairly and adequately protect the interests of the classes because their interests in proving that State Farm has breached its obligation to assess for diminished value are aligned with

the interests of the class members and devoid of any conflict. They also argue they have demonstrated an ongoing commitment to the classes and retained experienced counsel.

Without distinguishing between typicality and adequacy of representation, State Farm responds that the Plaintiffs cannot establish either requirement for two reasons. (Doc. 56 at 20). First, State Farm argues that the "Plaintiffs' prosecution of their own claim … for a properly-remediated clean-water leak" will not be typical of other insureds' claims, such as a class member who suffered extensive water damage which was not properly remediated. Second, State Farm argues that the Plaintiffs lack "standing" to raise any arguments regarding its policy endorsement, FE-5621 Diminution in Value Loss Restriction ("FE-5621"), because their insurance claim was not subject to it.[11] State Farm does not present any evidence of how many putative class members are subject to the endorsement.

The arguments State Farm raises are without merit. State Farm allegedly breached a common contract among all class members in the same way, regardless of whether and to what extent each class member suffered diminished value. The potential that State Farm may raise a defense against some class members based on its policy endorsement does not preclude class certification. *See, e.g.*, *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1327 (N.D. Ga. 2007). The Plaintiffs' claim is typical of and "share[s] the same essential characteristics as the claims of the

---

[11] State Farm began issuing this endorsement in all homeowners policies issued after November 1, 2013, and in all homeowners policy renewals issued after January 1, 2014. (Docs. 26 at ¶¶ 11-12; 19-9 at 2). The policy renewals issued after January 1, 2014, included a notice purporting to explain the effect of FE-5621. (Doc. 26 at ¶ 13). The Plaintiffs claim the notice is ambiguous and thus ineffective to reduce coverage under Georgia law. State Farm argues that both of the proposed subclasses would include policyholders whose claims are subject to the policy endorsement because "different policies come up for annual renewal on different anniversary dates." (Doc. 56 at 13 n.1).

class at large." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (internal quotation marks and citation omitted).

State Farm does not raise a third potential argument that might apply to one of the subclasses. As noted, the distinction between the subclasses is based solely on the potential applicability of a contractual one year statute of limitations. (Doc. 41-1 at 14 n.1). The Plaintiffs have structured the subclasses so that this potential defense is applicable only to one. They are not members of that subclass. Nevertheless, the Plaintiffs maintain that they are typical of that subclass and that they can adequately represent the subclass's interests because the substantive issues are the same for both subclasses. They also argue that State Farm has waived the one year statute of limitations. State Farm, in response to the Plaintiffs' efforts to certify, does not complain about the fact that the Plaintiffs are not members of that subclass. Nor does State Farm argue that the Plaintiffs are atypical because they are not subject to the contractual statute of limitations defense. It doesn't even mention the defense. Although State Farm does not raise these issues, they trouble the Court, particularly given that the Plaintiffs' amended complaint does not subdivide the class and that the Court presently sees no benefit to subdividing the class. Accordingly, as discussed more fully in the Conclusion, the Court will not, at this time, allow the Plaintiffs to subdivide the class.

The Plaintiffs have also established that they and their counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As discussed, the Plaintiffs have common interests with the class members they seek to represent. *See Piazza*, 273 F.3d at 1346. State Farm does not dispute the adequacy of class counsel, and the Plaintiffs have shown that they have retained counsel with experience

in litigating class actions and other complex cases.  (Docs. 41-1 at 20; 41-15; 41-16; 41-17; 41-18).  The Plaintiffs have also shown that they have demonstrated an ongoing commitment to the class by, among other things, reviewing pleadings, sitting for depositions, and remaining informed about the case.  (Docs. 41-1 at 20; 24-3 at 29:23-30:12, 110:11-113:25; 24-5 at 96:13-97:25).  Finally, there are no substantial conflicts of interest between the Plaintiffs and the class.  *See Valley Drug*, 350 F.3d at 1189.

Accordingly, the Plaintiffs have established typicality and adequacy of representation for their failure to assess claim.

### 5.  Superiority

The following factors are useful for determining whether a class action is a superior method for adjudicating the case:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  "The focus of this analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"  *Sacred Heart*, 601 F.3d at 1183-84 (citation omitted).  The predominance analysis has a significant impact on the superiority analysis; if common issues predominate over individual issues, then a class action is likely to be a superior vehicle for adjudicating the plaintiffs' claims.  *Id.* at 1184 (citations omitted).

The Plaintiffs' failure to assess claim raises crucial common questions, and "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir.

1983); *see also Falcon*, 457 U.S. at 155.  These common questions should be resolved in a single forum.  State Farm does not dispute the Plaintiffs' contention that there is no other ongoing litigation against it by insureds that comprise the proposed class, and the cost of litigating this claim on an individual basis would likely outweigh the potential damages, which the Plaintiffs estimate to be $2,500.  (Doc. 41-1 at 24).  Indeed, it does not appear that State Farm raises any superiority objection to the certification of the failure to assess claim.

Accordingly, the Plaintiffs have established that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### III.    CONCLUSION

As noted at the outset, the Plaintiffs' motion seeks to subdivide the class as defined in the amended complaint.  While the Court understands the basis for the distinction—one subclass may be subject to a contractual statute of limitations defense and the other is not—the Plaintiffs do not explain why the division is necessary.  And while State Farm does not object to the subdivision and does not raise its contractual statute of limitations defense as a reason not to certify, the subdivision raises a host of seemingly unnecessary issues.  Must the Plaintiffs amend their complaint to modify the class definition?  *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 103-04 (N.D. Ill. 2013).  Do the Plaintiffs have "standing" to pursue claims on behalf of a class of which they are not members?  *See, e.g.*, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the

same interest and suffer the same injury shared by all members of the class he represents."). If this is not a true standing issue, is it nonetheless necessary that a class representative be a member of a class in every respect? *See, e.g.*, *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition."); *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978) ("A fundamental requirement is that the representative plaintiff must be a member of the class she wishes to represent.").[12]

Accordingly, and while State Farm does not object to the subdivision of the class, the Court is not inclined to allow the Plaintiffs to do so at this time. Thus, the Court will certify the undivided class to assert the claim for failure to assess for diminished value. If the Plaintiffs truly think there is a need to subdivide the class, they can move to amend their complaint within 21 days of this Order, and the Court will consider whether "to alter or amend the certified class." *Prado-Steiman*, 221 F.3d at 1278 (citing Fed. R. Civ. P. 23(c)(1)).

Accordingly, the Plaintiffs' motion for class certification (Doc. 41) is **GRANTED in part** and **DENIED in part**. It is **ORDERED**:

1. The named Plaintiffs John Thompson and Leigh Ann Thompson are designated as class representatives of a Rule 23(b)(3) class defined as follows:

   All former or current homeowners insurance policyholders of State Farm who, within the period of six years next preceding the commencement of the instant civil action, presented first-party claims arising from direct physical losses to their properties as a result of water damage to their homes, which are events covered by the policy, wherein diminished value was not paid in connection with said claims.

2. The class is certified with respect to the following cause of action:

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

A breach of contract claim against State Farm based on its failure to assess for diminished value.

3. Pursuant to Rule 23(g), Adam P. Princenthal, C. Cooper Knowles, Clinton W. Sitton, James C. Bradley, Matthew A. Nickles, Michael J. Brickman, Nina Fields Britt, and Richard Kopelman are appointed as class counsel.

Within 21 days from the date of this Order, the parties shall file a joint proposal for providing notice to class members. The notice shall comply with the requirements of Rule 23(c)(2)(B). In the event the parties are unable to reach a consensus for providing class members or potential class members with notice, the parties shall submit a single document outlining the areas in which they agree and those in which they do not agree.

Based upon the Court's ruling, it appears to the Court that the following motions are moot: (1) Plaintiffs' motion to exclude certain testimony of Defendant's experts (Doc. 44) and (2) State Farm's motion to exclude the testimony of Dr. John Kilpatrick (Doc. 46). Thus, they are **DENIED without prejudice** but may be renewed upon appropriate notice.

**SO ORDERED**, this 9th day of March, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT