IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN THOMPSON and LEIGH ANN THOMPSON, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 5:14-CV-32 (MTT) |

## ORDER

The Plaintiffs have moved for reconsideration of the Court's Order denying their supplemental motion for class certification under Rule 23(b)(2), and Defendant State Farm has moved for reconsideration of the Court's Order granting in part and denying in part the Plaintiffs' motion for class certification under Rule 23(b)(3).  (Docs. 80; 81).  For the following reasons, both motions are **DENIED**.

### 1.  Plaintiffs' Motion for Reconsideration

The Plaintiffs previously moved the Court to certify a class of all State Farm homeowners insurance policyholders in the state of Georgia and enter a declaratory judgment regarding the scope of their insurance coverage.  (Doc. 19).  The Plaintiffs later filed a "supplemental motion" for class certification in order to "add a corresponding injunction to the declaratory relief requested" in their prior motion.  (Doc. 42).  The Court denied the Plaintiffs' initial request for relief after determining that it lacked subject matter jurisdiction over their claim for a declaratory judgment.  (Doc. 47).  For the same

reasons, the Court determined it lacked subject matter jurisdiction over their claim for injunctive relief.  (Doc. 79).  The Plaintiffs now ask the Court to reconsider its denial of their supplemental motion for class certification.  (Doc. 81).

In its Order finding it lacked subject matter jurisdiction over the Plaintiffs' claim for declaratory relief, the Court noted that the Plaintiffs must show there is a "substantial likelihood" they will suffer future injury in order to invoke the Court's authority to adjudicate their dispute.  (Doc. 47 at 10) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)).  The Plaintiffs agree they have this burden. (Doc. 81 at 3) (quoting *Malowney*, 193 F.3d at 1347).  Because the Plaintiffs' injury is contingent upon their townhouse suffering damage, the Court also determined that the "practical likelihood" this contingency will occur is the salient question.  (Doc. 47 at 10) (quoting *GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995)).  Again, the Plaintiffs agree this is the "focus."  (Doc. 81 at 3) (quoting *GTE Directories*, 67 F.3d at 1569).  In their prior motions, the Plaintiffs failed to offer any evidence to satisfy these tests and simply argued that they "would not need to buy insurance if this practical likelihood did not exist."  (Doc. 47 at 10).  The Court determined that the "mere possibility" the Plaintiffs' townhouse might suffer damage in the future is too remote to satisfy the case-or-controversy requirement and that they could not "rely solely on the prior damage to their townhouse and State Farm's alleged denial of their claim for diminished value to establish that they face a substantial risk of future harm."  (Doc. 47 at 11).  "Without any evidence suggesting that the Plaintiffs will suffer future injury," the Court concluded that it lacks jurisdiction over their claim.  (Doc. 47 at 11).

The Plaintiffs now ask the Court to reconsider its denial of their supplemental motion "under the appropriate probabilistic-injury standard." (Doc. 81 at 2). They argue that "probabilistic, not inevitable, injury is all that is required to confer standing" and say that the Court's prior holding "suggests [they] must be subject to an inevitable future injury rather than just a probabilistic injury." (Doc. 81 at 1-2). In their view, "'[p]robabilistic' does not require any specific degree of certainty or that future harm is certain." (Doc. 81 at 3). To the extent some degree is required, they say they have uncovered evidence they were previously unaware of that suggests there is "as much as a 10% probability" their townhouse will suffer damage in any "given year." (Doc. 81 at 2). The Plaintiffs' evidence consists of two internet articles. The first appears to be a sales brochure of some sort that gives no basis for its contention that there is a 1 in 10 chance of an insured making a claim of some unspecified kind.[1] The other, more reliable article if anything contradicts their claim because it says that 5.3% of insured homes had a claim in 2014.[2] Based on these "data," the Plaintiffs argue "there is a probability that [they] will suffer another loss to their home and [State Farm] will then improperly fail to assess and pay for diminished value." (Doc. 81 at 5).

---

[1] *Base Rate Neglect – Help Yourself by Knowing the Odds*, Financial Planning Association, *http://www.plannersearch.org/life-events/financial-planning/Base%20Rate%20Neglect%20%20Help%20Yourself%20by%20Knowing%20the%20Odds* (last visited May 17, 2016) ("That [sic] fact that is disregarded, however, is that the odds of filing a claim in a given year are only one in 10. … A good understanding of the mind's tendency to neglect underlying percentages can help you save, spend, and invest more wisely.").

[2] *Homeowners and Renters Insurance*, Insurance Information Institute, http://www.iii.org/fact-statistic/homeowners-and-renters-insurance (last visited May 17, 2016).

The Court doubts that it must unquestionably accept there is "as much as" a 10 percent chance the Plaintiffs' townhouse will suffer damage in any given year.[3]  State Farm, however, fails to offer any evidence of its own and does not contest the Plaintiffs' evidence, apart from arguing that it does not reference the Plaintiffs, State Farm, or the state of Georgia.  (Doc. 85 at 4).  Instead, State Farm argues that even if the 10 percent chance were accurate, the Plaintiffs still cannot invoke the Court's jurisdiction.  Therefore, the Court will consider whether this "fact," as the Plaintiffs argue, "establishes a probabilistic injury necessary to demonstrate [their] substantial likelihood of future harm."  (Doc. 81 at 4).

It is one thing to say, as many courts have, that probabilistic harm is sufficient to confer Article III standing.  *See, e.g.*, *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1162-63 (11th Cir. 2008); *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1288 (11th Cir. 2010).  It is yet another to say what probabilistic harm means.  Dictionaries tell us that the adjective probabilistic means "of, relating to, or based on probability."[4]  If strict probability is the standard, that is, more likely to happen than not,[5] then probabilistic standing would be a narrow concept and of no help to the Plaintiffs here.  Perhaps probabilistic standing is not that strict or that formulaic.  But neither does probabilistic standing extend, as some advocate, to any plaintiff who faces even a slight risk of harm from a defendant's anticipated conduct.  *See* F. Andrew Hessick,

---

[3] If a question of fact is relevant to determining whether a plaintiff has satisfied the Rule 23 prerequisites for class certification, the Court must "actually decide it and not accept it as true or construe it in anyone's favor."  *Brown v. Electrolux Home Prods., Inc.*, --- F.3d ---, 2016 WL 1085517, at *4 (11th Cir. 2016). Although not technically a Rule 23 prerequisite, "any analysis of class certification must begin with the issue of standing."  *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).

[4] Merriam–Webster Online Dictionary, http://www.merriam-webster.com/dictionary/probabilistic (last visited May 17, 2016).

[5] *See Probability*, Black's Law Dictionary (10th ed. 2014).

*Probabilistic Standing*, 106 Nw. U.L. Rev. 55 (2012).  The truth, it seems, is that probabilistic standing is a matter of degree and is not capable of precise definition.

Relying on the Eleventh Circuit's decisions in *Browning* and *Mulhall*, the Plaintiffs first argue they do not need to show with "any specific degree of certainty" that they will suffer future harm.  (Doc. 81 at 3).  *Browning* offers little support for the Plaintiffs' cause because of the statistical certainty there that at least one member of the organizational plaintiffs would suffer injury.  522 F.3d at 1163-64 (noting that with 20,000 members it is "highly unlikely" that not a single member will be injured and concluding that "someone is certain to get injured in the end").  It certainly cannot be said that the Plaintiffs will almost certainly suffer a loss.  Similarly, the plaintiff's First Amendment rights in *Mulhall* were "at imminent risk of invasion" because an agreement his employer entered into with a labor union "substantially increase[d] the likelihood" that he would be unionized against his will.  618 F.3d at 1288; *see also GTE Directories*, 67 F.3d at 1569 (concluding that the "practical likelihood" the contingencies would occur was "very high" and "almost inevitable").  The Plaintiffs do not argue their interests are at imminent risk of invasion or otherwise address whether there is "'a realistic danger of sustaining a direct injury as a result' of the challenged action."  *Mulhall*, 618 F.3d at 1288 (quoting *Browning*, 522 F.3d at 1161).  Clearly, these cases do not stand for the proposition that any chance of injury is sufficient to confer jurisdiction.

Apart from these cases, the Plaintiffs rest heavily on the Seventh Circuit's decision in *Bankers Trust Company v. Old Republic Insurance Company*, 959 F.2d 677 (7th Cir. 1992).  While *Bankers Trust* is instructive, it is not helpful to the Plaintiffs. There, Bankers Trust sued Old Republic's insured and, while that case was pending,

filed a declaratory judgment action against Old Republic to determine whether Old Republic's excess policy provided coverage for Bankers Trust's *existing* claim against Old Republic's insured.  To be sure, there were many contingencies that would have to occur before Bankers Trust would be in a position to collect the proceeds of Old Republic's policy.  Bankers Trust would have to get its case against the insured to a jury, and it would then have to receive an award in excess of the insured's primary insurance coverage (and apparently another excess carrier who had a layer of coverage below Old Republic's).  That none of these contingencies might occur did not change the fact that there was a "real disagreement" whether Old Republic's existing policy provided coverage for Bankers Trust's existing claim against the insured and that this dispute "seriously threaten[ed]" Bankers Trust's "legally protectable interest" in that policy.  *Id.* at 681-82.  "Of course," the Seventh Circuit clarified, "this doesn't mean that any probability, however slight, of injury is enough to permit a suit to be maintained in federal court.  We are dealing with matters of degree."  *Id.* at 681.

Here, there is certainly a real disagreement between the Plaintiffs and State Farm concerning their prior loss and the State Farm policy they had then.  But unlike in *Bankers Trust*, the loss that is the subject of the Plaintiffs' claim for injunctive relief has not yet occurred, and State Farm has not yet taken a position on that loss.[6]  The Plaintiffs do not say when their townhouse will suffer a covered loss and thus cannot say their State Farm policy will still be in force when they suffer this possible loss.  They

---

[6] In fact, it now appears that State Farm may be willing to acknowledge that it does have a duty to assess and pay for diminished value.  (Doc. 74 at 278:1-279:7, 280:2-7).  As State Farm argues in its response, even if the Plaintiffs submit another claim at some point in the future, "there is no way to know now what they will claim or what State Farm will pay."  (Doc. 85 at 5).  Of course, "Article III standing must be determined as of the time at which the plaintiff's complaint is filed."  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).

do not say denial of some future claim is "certainly impending" or "likely to occur immediately." *Browning*, 522 F.3d at 1161 (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003)); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). They only argue there is a "substantial likelihood of future harm" because there is a 10 percent chance their townhouse will suffer such a loss. (Doc. 81 at 4). These are apparently the same odds that every insured in the United States faces of filing an insurance claim. Although the Plaintiffs are not required "to demonstrate that it is literally certain that the harms they identify will come about," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013), "a 'perhaps' or 'maybe' chance is not enough." *Malowney*, 193 F.3d at 1347; *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). It is a matter of degree, and the degrees of separation here are simply too great to confer Article III standing.

Accordingly, the Plaintiffs' motion for reconsideration is **DENIED**.

**2. State Farm's Motion for Reconsideration**

State Farm primarily raises two arguments in its motion for reconsideration. First, State Farm argues an insured can bring a failure to assess claim only if it turns out that the insured in fact suffered diminished value, which, of course, would require the same individualized assessment that makes the Plaintiffs' failure to pay claim unsuitable for class certification. (Doc. 80 at 2-5). "Relatedly," State Farm argues that the failure to pay and failure to assess claims are "the same claim, under settled *res judicata* principles," and "must be tried together." (Doc. 80 at 2).

State Farm raised this first argument before. (Doc. 56 at 19-20, 23-24). According to State Farm, it can fail to perform its contractual duty to assess for

diminished value but only breach its contract if some later assessment eventually reveals that diminished value in fact exists.  (Doc. 80 at 3-4).  Again, as far as the failure to assess class is concerned, the existence of diminished value is not an issue.  Rather, the issue is whether State Farm breached its alleged duty to assess for diminished value.  This is established by State Farm's failure to assess, not by diminished value.  (Doc. 78 at 21).

State Farm's second argument is not entirely clear.  State Farm argues the Plaintiffs' failure to pay and failure to assess claims are, as a matter of res judicata, "aspects of a single, indivisible claim for breach of contract."  (Doc. 80 at 5).  State Farm previously argued, without mentioning res judicata, that the Plaintiffs could not "splinter" or "split" their "breach-of-contract-by-insurance-underpayment claim" and so there is no separate failure to assess claim.  (Doc. 56 at 18-19, 23).  Now, State Farm argues that the claims are the "same claim" and "cannot be separately adjudicated."  (Doc. 80 at 5).  It thus appears State Farm may be arguing that the doctrine of res judicata supports its prior position that the Plaintiffs cannot bring a failure to assess claim because there is only a single breach of contract claim.  (Doc. 80 at 5).  As previously discussed, this position is untenable in light of *Mabry*.[7]  (Doc. 78 at 19-21).

On the other hand, State Farm could be conceding that the Plaintiffs can bring a separate failure to assess claim and could be arguing, for the first time, that the potential for res judicata should factor into the Court's class certification decision.  State Farm, however, does not discuss res judicata in the context of the Rule 23 prerequisites or the Court's class certification decision.  For instance, State Farm does not argue that the potential preclusive effect of this action on any future failure to pay claim creates an

---

[7] *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001).

adequacy of representation problem that should defeat class certification.  *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 114-16 (E.D.N.Y. 2012); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 338-40 (S.D.N.Y. 2002).  Nor does State Farm argue that the Court cannot limit the scope of this action's preclusive effect.[8]  Instead, State Farm simply argues that if the failure to assess class remains certified, a decision on the merits "will dispose of any breach of contract claim any class member had with respect to the water loss at issue," including any potential failure to pay claim.  (Doc. 80 at 6).  The Plaintiffs respond that res judicata would not bar a future failure to pay claim because, here, there is no full and fair opportunity to litigate that claim, no identity of cause of action, and no adjudication on the merits—all requirements under Georgia law.[9]  (Doc. 84 at 5).

The Plaintiffs are likely correct.  Because the Court refused to certify the Plaintiffs' failure to pay claim, class members will not have an opportunity to litigate the merits of that claim in this action.  *See V.I.P. Homes, Inc. v. Weader*, 216 Ga. App. 412, 412, 454 S.E.2d 548, 550 (1995) (upholding refusal to apply res judicata where claims were previously dismissed "on a procedural basis before appellees had the full opportunity to litigate their claim on the merits").  Again, as far as the members of the certified class are concerned, there is no claim that State Farm failed to pay diminished value.  Of course, it is likely the case that "a court adjudicating a class action cannot predetermine the res judicata effect of its own judgment; that can only be determined in

---

[8] *See, e.g.*, Elizabeth Chamblee Burch, *Adequately Representing Groups*, 81 Fordham L. Rev. 3043, 3066-67, 3066 n.123 (2013) ("This is a matter of much confusion in lower court cases based primarily on the Supreme Court's ruling in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984)."); Tobias Barrington Wolff, *Preclusion in Class Action Litigation*, 105 Colum. L. Rev. 717 (2005).

[9] The parties agree that Georgia law would apply.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001).

a subsequent suit." *Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008).  Perhaps mindful of this, the Plaintiffs say they can inform class members about the potential preclusive effect of this action on other claims, and those who wish to avoid that effect can opt out of the class.  (Doc. 84 at 6).  That and other issues arguably raised by the certification of only the failure to assess class should be addressed in the parties' joint proposal for providing notice to class members.  But, at this stage, the potential preclusive effect of this action on other claims does not render the Plaintiffs inadequate representatives or otherwise defeat certification of the failure to assess class.

Therefore, State Farm's motion for reconsideration is **DENIED**.

**SO ORDERED**, this 19th day of May, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT