**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **JOHN THOMPSON and LEIGH ANN THOMPSON, Individually and on Behalf of All Others Similarly Situated,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **CIVIL ACTION NO. 5:14-CV-32 (MTT)** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** ) ) ) ) | |
| **Defendant.** ) ) | |

## ORDER

This case presents one of the latest efforts of policyholders to reap the benefit of court rulings that casualty insurance policies, absent an appropriate exclusion, cover diminished value. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001). The Plaintiffs owned a townhouse in Smyrna, Georgia, that was insured by State Farm Fire and Casualty Company under a homeowners policy. Docs. 19-2 at ¶¶ 1-2; 19-4. The Plaintiffs' townhouse suffered water damage on September 20, 2013 when a pipe burst. Docs. 6 at ¶ 13; 24-5 at 58:8-11. Plaintiff John Thompson then called State Farm and asked if State Farm would pay for "diminished value" to the townhouse. Docs. 19-2 at ¶ 8; 24-3 at 90:15-91-24. According to the Plaintiffs, State Farm stated that it did not provide such coverage. Doc. 19-2 at ¶ 9. The next day, the Plaintiffs filed this lawsuit. Doc. 1.

In an order entered on March 9, 2016 and amended on February 23, 2017, the Court certified a Rule 23(b)(3) class of:

> All former or current Georgia homeowners insurance policyholders of State Farm who, within the period beginning six years prior to the commencement of the instant civil action and ending January 24, 2017, presented first-party claims arising from direct physical losses to their properties as a result of water damage to their homes, which are events covered by the policy, wherein diminished value was not paid in connection with said claims.[1]

Docs. 78 at 27; 103 at 3. This class was certified with respect to "[a] breach of contract claim against State Farm based on its failure to assess for diminished value." Doc. 78 at 27-28. The Court declined to certify a class of plaintiffs who claimed that State Farm had failed to pay diminished value. *Id.* at 18.

State Farm sought leave to appeal the Court's class certification under. Doc. 90-3 at 13. The Plaintiffs sought leave to cross-appeal. *See* Doc. 94-1. On January 24, 2017, the Eleventh Circuit denied State Farm's petition and the Plaintiffs' cross-petition. *Id.*

This Order addresses numerous motions for summary judgment filed by the parties.

The Plaintiffs seek partial summary judgment, asserting that:

(1) "[T]he insurance policies issued to the Class cover diminished value." Doc. 121 at 1.

---

[1] The Plaintiffs sought only a class extending to "persons formerly or currently insured under homeowners insurance policies issued by State Farm that provide coverage for property located in Georgia," but, due to an oversight, the Court omitted this restriction from its class definition. *See* Doc. 78 at 7, 27. As it currently stands, the class definition extends to "[a]ll former or current homeowners insurance policyholders of State Farm . . . ." Docs. 78 at 27; 103 at 3. The parties' joint proposal for class notice recognized the need for this restriction, stating: "the Class Members include all former or current homeowners insurance policyholders of State Farm *in Georgia.*" Doc. 104-1 at 8 (emphasis added). The Court's Order approving notice to the class reflected this restriction. *See* Docs. 108 at 2; 108-1 at 2, 5. Accordingly, the Court hereby **AMENDS** the class definition by inserting "Georgia" before "homeowners insurance policyholders of State Farm," as reflected in the text above. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.").

(2) "Endorsement FE-5621 is ineffective in excluding coverage for diminished value as to all class members or, alternatively, as to all class members who were issued renewal policies." Doc. 123 at 1.

(3) "State Farm had a duty to assess the Class's claims for diminished value." Doc. 121 at 1.

(4) "State Farm breached its duty to assess the Class's claims for diminished value." Doc. 138 at 1.

(5) "[T]he Class is entitled to recover monetary damages if State Farm breached that duty." Doc. 121 at 1-2.

(6) "State Farm has waived the contractual limitations provision [of one year to file suit] in the policies with respect to any claims with a date of loss before January 22, 2013." Doc. 124 at 1.

State Farm responded with cross-motions for summary judgment, asserting that:

(1) All claims with a date of loss before January 22, 2013 are barred by the one-year limitations provision. Doc. 125 at 1-2.

(2) Summary judgment is due against "all class members' claims, on the ground that class members' homeowners policies do not cover, and thus include no obligation to assess for, diminished value." Doc. 126 at 1.

(3) Summary judgment is due against the Thompsons on their individual claims, because "(i) damage is an essential element of a breach-of-contract claim under Georgia law; (ii) the undisputed facts show that the Plaintiffs have suffered no damage on which to base a breach-of-contract claim; and (iii) as a matter of Georgia law, there can be no claim for a breach of the implied covenant of good faith and fair dealing absent a viable breach-of-contract claim." Doc. 136 at 1.

As discussed below, the Plaintiffs' motions seeking partial summary judgment

(Docs. 121; 123; 124; 138) are **GRANTED IN PART** and **DENIED IN PART**. These

motions are **GRANTED in part** in that (1) policies issued prior to November 1, 2013,

being issued without FE-5621, cover diminished value (even if they were renewed with

FE-5621 and its accompanying notice), and (2) State Farm breached its duty to assess

for diminished value as to those policies. But the Plaintiffs' motions are **DENIED in part**

because, as a matter of law, (1) FE-5621 was effective to eliminate coverage for diminished value as to new policies issued with the endorsement, and (2) the Plaintiffs are not entitled to recover monetary damages.

State Farm's motions seeking (1) summary judgment because the "class members' homeowners policies do not cover, and thus include no obligation to assess for, diminished value" (Doc. 126); and (2) summary judgment against the Thompsons on the grounds that their property has suffered no diminished value (Doc. 136) are **DENIED**.

Finally, because there are genuine disputes of material fact as to whether State Farm waived the policies' one-year contractual limitations period, the parties' cross-motions on that issue (Docs. 124; 125) are both **DENIED**.

## II.  SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Id.* (citation omitted).  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing *Four Parcels of Real Prop.*, 941 F.2d at 1438). The moving party must carry its burden by presenting "credible evidence" affirmatively showing that, "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (citation omitted). In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict. *Id.* (citation omitted).

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.  *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

## III.  DISCUSSION

### A.  State Farm's standard form policies cover diminished value.

State Farm first argues that its standard policy language—"We insure for accidental direct physical loss to the property"—does not cover diminished value because "any diminution in value beyond the cost to repair or replace would be an

intangible, economic loss, not 'accidental direct physical loss' . . . included within the policy's insuring agreement." Docs. 126 at 2, 7-10; 128-1 ¶ 3. Second, State Farm argues that its loss settlement provision limits its "payment obligation . . . to the cost to repair or replace the damaged property." Doc. 126 at 11-12. The Court disagrees.

These arguments are, at best, small variations on the arguments rejected by the Georgia Supreme Court in *Mabry*, the seminal diminished value case in Georgia. There, the insurer, State Farm Mutual Automobile Insurance Company, contended "that its only obligation under the contract of insurance, when it elects to rely on the limitation of liability provision, is to pay for repairs which return the vehicle to its pre-loss condition." *Mabry*, 274 Ga. at 503, 556 S.E.2d at 119. The Georgia Supreme Court rejected that contention, holding:

> [T]he insurance policy, drafted by the insurer, promises to pay for the insured's *loss*; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the *loss* includes paying for any lost value. That interpretation has stood for 75 years in Georgia and has become, therefore, part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insured's *loss*. Thus, our holding in this case that State Farm [Mutual Automobile Insurance Company] is obligated to pay for diminution in value when it occurs is based on reason, precedent, and the intent of the parties. Recognition of diminution in value as an element of *loss* to be recovered on the same basis as other elements of *loss* merely reflects economic reality.

*Id.* at 508, 556 S.E.2d at 122 (emphases added, citation omitted). In *Royal Capital Dev. LLC v. Maryland Cas.* Co., the Georgia Supreme Court clarified that *Mabry*'s holding also applies to insurance contracts for real property. *See* 291 Ga. 262, 267, 728 S.E.2d 234, 238 (2012) ("[W]e hold that our ruling in *Mabry* is not limited by the type of property

insured, but rather speaks generally to the measure of damages an insurer is obligated to pay.").

This could not be clearer. If the insured suffers a covered "loss," diminished value is an element of that "loss," absent a different definition of loss in the policy. State Farm's parsing of the adjectives modifying loss and its attempt to characterize diminished value as purely "intangible, economic damages" are unavailing. *See* Doc. 126 at 8-10. Again, *Mabry* is clear: "[W]hat is lost when physical damage occurs is both utility and value;" diminished value is based on this loss of value and specifically refers to any amount by which property's pre-loss value exceeds the property's value post-repair.[2] *See Mabry*, 274 Ga. at 505, 556 S.E.2d at 120-21 (referring to "diminution in value" as "the difference between pre-loss value and post-loss value . . . modified by . . . repair so that the measure would be the difference between pre-loss value and post-repair value"). Accordingly, under this definition, if an insurer has a duty to pay for repair and restoration, it, to the same degree, has a duty to pay for any diminished value remaining notwithstanding the repairs.

State Farm's arguments based on "limitation of liability" or "loss settlement" language in its policies are just as clearly foreclosed by *Mabry* and *Royal Capital*. State Farm's standard form policies insure against any "accidental direct physical loss to the property described in Coverage A, *except as provided in* SECTION I - LOSSES NOT INSURED." Doc. 121-4 at 34 (emphasis added). The loss settlement provisions relied on by State Farm (*see* Doc. 126 at 11) do not appear in SECTION I - LOSSES NOT INSURED; instead they appear in SECTION I - LOSS SETTLEMENT. Doc. 121-4 at

---

[2] For ease of reference, the Court and the parties have come to refer to "diminution in value" as "diminished value." These phrases are interchangeable.

34-40.  Even more to the point, the Georgia Supreme Court rejected this precise argument: "[A] limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value."  *Royal Capital*, 291 Ga. at 262, 728 S.E.2d at 235 (quoting *Mabry*, 274 Ga. at 506, 556 S.E.2d at 121).

As discussed below, State Farm, after *Royal Capital*, moved to change by endorsement the definition of loss to exclude diminished value.  But absent an effective endorsement redefining loss, the State Farm policies at issue cover diminished value.

**B.    Endorsement FE-5621 excludes coverage for diminished value in *new* policies issued with the endorsement, but not *renewed* policies.**

After *Royal Capital*, State Farm began including the following endorsement with all new and renewed homeowners policies in Georgia:

FE-5621 DIMINUTION IN VALUE LOSS RESTRICTION

When used in Section I of this policy, loss does not include diminution in value.  This does not preclude payments as described in the Section I loss settlement provisions of this policy.

The following is added to the Section I loss settlement provisions of this policy:

The cost to repair or replace does not include any reduction in the value of any covered property prior to or following repair, rebuilding or replacement as compared to the value before the loss.

All other policy provisions apply.

Docs. 24-2 at 11; 130 at 7; 130-1 at ¶ 7.

This endorsement, which will be referred to as FE-5621, "was included in all homeowners policies issued to *new* customers on or after November 1, 2013."  Doc.

130-1 ¶¶ 7, 8 (emphasis added).  All homeowners *renewing* their policies on or after

January 1, 2014 received FE-5621 with a notice.  Doc. 130-1 at ¶ 8.  The notice read:

FE-5621C
Page 1 of 1

# IMPORTANT NOTICE

Effective with this policy term, endorsement **FE-5621 DIMINUTION IN VALUE LOSS RESTRICTION** is added to your policy.  This notice provides a brief summary of the endorsement.

The new endorsement adds language to emphasize that a Section I loss does not include diminution in the value of the covered property.

Endorsement **FE-5621** follows this notice.  Please read it carefully and keep it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is provided for informational purposes only, and does not change, modify or invalidate any of the provisions, terms or conditions of your policy or any other applicable endorsements.

## FE-5621 DIMINUTION IN VALUE LOSS RESTRICTION

When used in Section I of this policy, loss does not include diminution in value.  This does not preclude payments as described in the Section I loss settlement provisions of this policy.

The following is added to the Section I loss settlement provisions of this policy:

The cost to repair or replace does not include any reduction in the value of any covered property prior to or following repair, rebuilding or replacement as compared to the value before the loss.

All other policy provisions apply.

FE-5621

© Copyright, State Farm Mutual Automobile Insurance Company, 2013

Doc. 123-5 at 3 (highlight added).

The Plaintiffs offer three arguments regarding FE-5621 and the notice.  First, the

Plaintiffs argue that FE-5621 was "ineffective [to exclude diminished value coverage] as

to all class members," whether they were issued new policies or renewal policies,

because it "merely . . . change[d] the loss-settlement provision in the policies."  Doc.

123-1 at 9-10.  Second, the Plaintiffs argue that "FE-5621 . . . is ineffective with respect

to renewal policies . . . [because] the notice that accompanied the endorsement in

renewal policies is misleading and ambiguous."  *Id.* at 10.  Their third argument is that

FE-5621 "attempts to significantly reduce coverage by excluding diminished value," but

O.C.G.A. § 33-24-46 requires that "renewal polic[ies] must provide the same coverage

as the polic[ies] . . . supersede[d] unless the insurer sends a written notice of

nonrenewal." *Id.*

The Plaintiffs' first argument is without merit.  FE-5621, considered alone, does not merely "change[] the loss-settlement provision in the policies."  As discussed above, *Mabry* turned on the definition of "loss."  *Mabry* held that diminished value was assumed to be an element of the insurer's "promise to pay for the insured's loss."  *Mabry*, 274 Ga. at 508, 556 S.E.2d at 122.  The Georgia Supreme Court concluded that the traditional "interpretation [of loss that] has stood for 75 years in Georgia"—that "what is lost when physical damage occurs is both utility and value"—is the definition of loss "between the parties when they enter into a contract of insurance."  *Id.*  This was confirmed by *Royal Capital.  See Royal Capital*, 291 Ga. at 267, 728 S.E.2d at 237-38 ("We see no reason to limit our holding in *Mabry* to automobile insurance policies . . . .  The *Mabry* rule applies to the insurance contract at issue in this case." (quotation marks and citations omitted)).

But nothing in *Mabry* or *Royal Capital* precludes the insurer from providing a different definition of loss in its policies.  To the contrary, *Mabry* and *Royal Capital* reaffirm that insurance policies are a matter of contract between the parties.  *See id.* ("[W]hether damages for diminution of value are recoverable under [the subject policy] depends on the specific language of the contract itself . . . ."); *see also Mabry*, 274 Ga. at 503, 556 S.E.2d at 119.  This is exactly what State Farm did after *Royal Capital*.  FE-5621 provided a new definition of loss, stating specifically that "[w]hen used in Section I of this policy, loss does not include diminution in value."  Doc. 24-2 at 11.  This has nothing to do with the loss-settlement provisions; it works a fundamental change in

State Farm's underlying coverage obligations.[3]

The Plaintiffs' focus on FE-5621's change of definition of "repair" and "replace" in the loss-settlement provision reflects another misunderstanding of *Mabry*. Far from being beside the point or creating ambiguity, these definitions were necessary complements to State Farm's new definition of loss in light of *Mabry*'s reliance on Georgia precedent defining "repair" to "mean restoration of the vehicle to substantially the same condition and *value* as existed before the damage occurred." *See Mabry*, 274 Ga. at 505, 556 S.E.2d at 121 (emphasis added) (quotation marks and citation omitted).

In short, FE-5621 adds a definition of loss that clearly excludes coverage for diminished value. Beyond their argument that somehow FE-5621 failed to define loss, the Plaintiffs offer no reason why State Farm could not, in new policies, define loss to exclude diminished value. Accordingly, State Farm's policies first issued on or after November 1, 2013, because they were issued with FE-5621, do not cover diminished value.

The same is not true of renewed policies. O.C.G.A. § 33-24-46, which applies specifically to homeowners policies, requires that a renewed policy must "provid[e] no less than the coverage contained in the superseded policy" to qualify as a renewal. O.C.G.A. § 33-24-46(b)(4). Because FE-5621's new definition of loss purports to change in a significant way the coverage provided by State Farm policies, it clearly

---

[3] Not incidentally, FE-5621 belies much of what State Farm has argued in this Court. State Farm clearly recognized exactly what the Georgia Supreme Court had done in *Royal Capital*—it made clear that loss included diminished value—and State Farm knew exactly what it needed to do in response to *Royal Capital*—provide a definition of loss excluding coverage for diminished value. That is precisely what FE-5621 does. Things have become complicated because State Farm, while clearly recognizing the need to define loss to exclude diminished value, wants at the same time to argue that loss never included diminished value.

provided "less than the coverage contained in the superseded policy."  Thus, a "renewal" attempting to incorporate FE-5621 cannot be, under Georgia law, a renewal of a policy that covers diminished value.  On the contrary, when State Farm attempted to apply FE-5621 to an existing policy, it was refusing to renew the existing policy.  In this situation, O.C.G.A. § 33-24-46(d) requires the insurer to deliver to the insured a written notice of nonrenewal.  Given these statutory requirements, it is not surprising that State Farm's policies themselves require State Farm to provide insureds a written notice of nonrenewal when it elects to not renew.  *See* Doc. 121-4 at 47 ("If we elect not to renew, a written notice will be delivered to you.").

The language of the statute and its application here could not be clearer.  When State Farm sought, through FE-5621, to reduce the coverage of existing policies, it had a duty to inform its insureds that it was not renewing their coverage for diminished value.  State Farm instead represented to its insureds that it was renewing their policies.  Indeed, if anything, State Farm misrepresented to insureds that their existing policies did not cover diminished value when it said in the notice accompanying FE-5621 that the endorsement merely "emphasize[d]" that their policies did not cover diminished value.  Doc. 123-5 at 3.  State Farm cannot have it both ways; either FE-5621 reduced coverage or it did not.  And if State Farm did not want to renew coverage for diminished value, both O.C.G.A. § 33-24-46 and State Farm's policies required notice that the policy was not to be renewed as originally written.  *See* Doc. 121-4 at 47.  Whatever State Farm's notice did, it did not do this.  Accordingly, the renewal policies are indeed renewals of the old policies and therefore cover diminished value.

State Farm's reliance on *Parris & Son, Inc. v. Campbell*, 128 Ga. App. 165, 196 S.E.2d 334 (1973) and *Utica Mut. Ins. Co. v. Dunn*, 106 Ga. App. 877, 129 S.E.2d 94 (1962) is misplaced.  Doc. 130 at 20-21.  Both cases were decided before O.C.G.A. § 33-24-46 was enacted in 1978.  Newer cases reiterate the requirement that, if a purported "renewal" reduces the scope of coverage, the insurer must provide notice to the insured that the policy is not being renewed.  In *Pennsylvania Millers Mutual Insurance Company v. Dunlap*, the Georgia Court of Appeals made clear that when a purported policy renewal is accompanied by an endorsement reducing coverage, the insurer must give the "required written notice that the policy was not to be renewed as originally written."  153 Ga. App. 116, 118, 264 S.E.2d 483, 485 (1980); *see also Borders v. Glob. Ins. Co.*, 208 Ga. App. 480, 483, 430 S.E.2d 854, 857 (1993) (indicating that "subsequent insurance agreement . . . that it contains fewer endorsements" could be renewed so long as "not shown by the record to reduce directly the scope of 'coverage'").

State Farm also argues that O.C.G.A. § 33-24-46 has no application here because FE-5621 is an endorsement and the statute "says nothing about endorsements or the validity of an endorsement issued with a renewal policy."  Doc. 130 at 21.  This is incorrect.  By statutory definition, O.C.G.A. § 33-24-46's reference to "policy" includes endorsements.  *See* O.C.G.A. §§ 33-24-1 ("As used in this chapter, the term . . . '[p]olicy' means the written contract of or written agreement for or effecting insurance. The term includes all clauses, riders, *endorsements*, and papers attached or issued and delivered for attachment to the contract or agreement and made a part of the contract or agreement." (emphasis added)), 33-24-16 ("Every insurance contract shall be construed

according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, *endorsement*, or application made a part of the policy." (emphasis added)). Moreover, this argument defies common sense and industry practice.[4] There is no reason to conclude that State Farm can do through an endorsement what it could not do by redrafting its standard form.

State Farm next argues that even if it were required to send the notice of nonrenewal under O.C.G.A. § 33-24-46, "failure to abide by its terms would not void or otherwise invalidate the endorsement" because the Georgia legislature "did not intend a technical violation of state insurance regulations 'automatically to invalidate' an insurance policy." Doc. 130 at 21 (quoting *Williams v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2014 WL 4386463, at *2 n.15 (N.D. Ga.) (citations omitted)). This proposition, in turn, relies on a Georgia Court of Appeals case—*Penn Am. Ins. Co. v. Miller*, 228 Ga. App. 659, 492 S.E.2d 571 (1997)—and O.C.G.A. § 33-24-12(a), upon which *Miller* relies in part.

*Miller* involved a challenge to the enforceability of an assault and battery exclusion on the grounds that it was not previously approved by the Georgia Insurance Commissioner as required by statute; notably, there was no contention that the Commissioner would have disapproved of the provision. *Miller*, 228 Ga. App. at 660-61, 492 S.E.2d at 572-73. Similarly, *Williams* addressed a failure to file an entire policy with the Commissioner. *See Williams*, 2014 WL 4386463, at *1-2 (citation omitted). *Miller* thus stands for the proposition that in the absence of an express statutory penalty,

---

[4] State Farm itself cites statutes, case law, and its standard policy that demonstrate that the policy includes endorsements. *See, e.g.*, Doc. 130 at 10 n.3 ("Each State Farm policy consists of the declarations page, any endorsements and the policy form." (quoting Doc. 121-4 at 24)).

courts should not disturb the bargain struck by the parties due to a mere technical violation of insurance law. *See Miller*, 228 Ga. App. at 661, 492 S.E.2d at 573 ("Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, including insurance contracts, unless prohibited by statute or public policy." (quotation marks and citation omitted)). But failure to give statutorily- and policy-required notice to the insured of a discontinuation of coverage, unlike failure to obtain prior approval from the Commissioner, cuts at the underlying contractual obligations of the parties. Indeed, the policy—the parties' contract—requires the notice of nonrenewal. Doc. 121-4 at 47. Accordingly, State Farm's failure to fairly inform its insured of its nonrenewal of diminished value coverage is not a mere technical violation of Georgia insurance law.

O.C.G.A. § 33-24-12(a) does not dictate otherwise. It states:

> Any insurance policy, rider, or endorsement issued after January 1, 1961, and otherwise valid which contains any condition or provision not in compliance with the requirements of this title shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy, rider, or endorsement been in full compliance with this title.

There are two chief reasons why this statute, on its face, does not dictate a different result. First, the issue here is a failure to give notice, not the noncompliance of an "insurance policy, rider, or endorsement" with insurance law. Second, building on the first point, this provision assumes the "insurance policy, rider, or endorsement" is "otherwise valid." As demonstrated above, under Georgia law and the terms of the policies, an endorsement reducing coverage requires notice; without such notice, the endorsement is not "otherwise valid." If there were any doubt as to this construction, it

is eliminated by *Dunlap*.  An insured cannot "be charged with a legal duty to read an endorsement . . . which change[s] [the] original policy upon renewal, . . . when the required written notice that the policy was not to be renewed as originally written was not given by the appellant."  *Dunlap*, 153 Ga. App. at 118, 264 S.E.2d at 485.  And where an insurer issues a policy which differs from the original, it is obligated to inform the insured; if it fails to do so, "such change is no part of the contract."  *Id.* (quotation marks and citations omitted).

Accordingly, policies renewed with FE-5621 continued to cover diminished value, notwithstanding FE-5621.

## C.    State Farm had a duty to assess.

In *Mabry*, State Farm's duty to assess rested on several conclusions:

1. "[T]he policies issued by State Farm [Mutual Automobile Insurance Company] obligate it to compensate its policyholders for that loss of value, notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value."

2. "[T]he fact [that] physical damage resulting from an event covered by the policy can reduce the value of [the subject property], even if repairs return it to pre-loss condition in terms of appearance and function."

3. "State Farm [Mutual Automobile Insurance Company] is obligated to assess [diminished value as an] element of loss along with the elements of physical damage when a policyholder makes a general claim of loss."

*Mabry*, 274 Ga. at 509, 556 S.E.2d at 123.  The first and third conclusions turned on the construction of State Farm Mutual Automobile Insurance Company's policies and thus presented questions of law for the Court.  The second conclusion was based on the undisputed facts.  The Plaintiffs argue the same conclusions are demanded here.  The Court agrees.

First, as to the question of coverage, the Court has already determined that policies not originally issued with FE-5621 cover diminished value as an element of loss.

Second, the question of whether the possibility of diminished value arises when real property suffers a water damage loss, even if repairs return it to pre-loss condition in terms of appearance and function, bears discussion. The Plaintiffs argue that the Georgia Supreme Court did away with this requirement in *Royal Capital*. The argument is from silence:

> [W]hen the Georgia Supreme Court held in *Royal Capital* that *Mabry* applied to insurance policies covering real property, there was no discussion of whether there was potential for diminished value. In fact, in answering in the affirmative a certified question from the Eleventh Circuit, the *Royal Capital* court simply declared that the *Mabry* rule applies to standard insurance contracts for real property. The court did *not* predicate its holding on a factual showing of potential for diminished value, and there is no reason for this Court to do so, as the issue here, like *Royal Capital*, is simply a matter of contract.

Doc. 138-1 at 13-14.[5] The Court disagrees. The plaintiff in *Royal Capital* was a single

---

[5] The Plaintiffs further this argument by capitalizing on some shorthand employed by the Eleventh Circuit in framing the question on certification—the "*Mabry* rule." *See Royal Capital*, 291 Ga. at 263, 728 S.E.2d at 235 ("[T]he single question presented in this appeal is whether the Georgia courts would hold that the *Mabry* rule extends to standard insurance contracts for buildings." (quoting *Royal Capital Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1052 (11th Cir. 2011)). The Georgia Supreme Court used the phrase once:

> We adhered in *Mabry* to the long-standing contract interpretation rule in Georgia that where "[an] insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value." 274 Ga. at 508, 556 S.E.2d 114. We see no reason to limit our holding in *Mabry* to automobile insurance policies and we thus answer the primary question posed by the Eleventh Circuit Court of Appeals in the affirmative: The *Mabry* rule applies to the insurance contract at issue in this case. Accordingly, whether damages for diminution of value are recoverable under Royal Capital's contract depends on the specific language of the

insured suing its insurer for diminished value. *Royal Capital*, 291 Ga. at 263, 728 S.E.2d at 235. The dispute was limited to whether the policy covered diminished value obligating the insurer to pay for the diminished value alleged by the insured; it was this narrow question that was certified to, and answered by, the Georgia Supreme Court in *Royal Capital*. *See id.* ("[W]e hold that our ruling in *Mabry* is not limited by the type of property insured, *but rather speaks generally to the measure of damages an insurer is obligated to pay.*" (emphasis added)). But *Royal Capital* had nothing to do with a duty to assess. The word "assess" is not even used in the case. The Plaintiffs conflate the coverage question with the ultimate question of whether State Farm had a class-wide duty to assess. As *Mabry* makes clear, this duty exists if "there is a potential for a diminution in value loss [beyond what is abated by repair] in every event of loss." *Mabry*, 274 Ga. at 503, 556 S.E.2d at 119. *Royal Capital* did not change this.

The Plaintiffs, alternatively, argue that the uncontroverted evidence demonstrates the possibility of diminished value in claims arising from a water-loss event. Doc. 138-1 at 19. On this point, State Farm raises a factual argument of its own. State Farm contends "the Thompsons cannot assert a claim that State Farm breached its obligation to assess for diminished value if they do not have a breach of contract claim for failure to pay diminished value. And they have no such claim, because the undisputed facts show that the Thompsons experienced no diminished value as a result of the 2013 pipe break." Doc. 136-1 at 10. This argument is both factually and legally without merit.

---

contract itself and can be resolved through application of the general rules of contract construction.

*Id.* at 267, 728 S.E.2d at 237-38. The reference to the "*Mabry* rule" addresses only the question of whether a policy covering a "loss" covers diminished value (notwithstanding repair and replacement loss settlement provisions). The Georgia Supreme Court clearly did not use the phrase the "*Mabry* rule" as extending to each particular question and conclusion reached in the *Mabry* litigation.

In arguing that the Thompsons suffered no diminished value, State Farm's sole evidence is the sale of the Thompsons' house earlier this year. Doc. 136-1 at 4-5. State Farm assumes that because the Thompsons sold the house for their asking price and the purchasers did not appear significantly concerned about the water damage loss, the Thompsons suffered no diminished value. Docs. 136-1 at 7; 152 at 4. But this does not demonstrate that the Thompsons did not suffer a diminished value loss when their property was damaged in 2013. As noted above, diminished value is measured by comparing the pre- and post-loss values of the property, abated by any repairs. *See Mabry*, 274 Ga. at 505, 556 S.E.2d at 121 (referring to diminished value as "the difference between pre-loss value and post-loss value . . . modified by . . . repair so that the measure would be the difference between pre-loss value and post-repair value").

The relevance of the Thompsons' sale of their home nearly four years later is accordingly limited, and that sale is certainly not dispositive. Also, State Farm's arguments fail to account for claimed improvements, and for changes in external market factors, particularly changes in supply and demand, between 2013 and 2017.[6] Accordingly, whatever relevance the 2017 sale has to diminished value, it certainly does not establish as a matter of law that the Thompsons suffered no diminished value.

In any event, the Thompsons, at this point, do not have to prove an actual diminished value loss. Whether the Thompsons have or have not suffered diminished

---

[6] The Plaintiffs assert that Mrs. Thompson testified that they "made improvements and renovations to their home prior to listing it for sale, including upgrading their kitchen appliances, installing a new HVAC system, painting multiple rooms of the home and replacing the carpet in multiple rooms." Docs. 157-1 p.4 ¶ 1. The Plaintiffs cite to Doc. "129-2 at 10:21-11:15" for this testimony, and even reproduce this portion of the transcript in their supplemental statement of material facts (Doc. 157-2 pp. 20-21 ¶ 13). However, this portion of Mrs. Thompson's transcript does not appear in Doc. 129-2 or elsewhere in the record as best as the Court can discern. *See generally* Doc. 129-2.

value is simply irrelevant to their standing to bring a claim for State Farm's failure to assess for diminished value. The Court has already addressed this point. In the Order certifying this class, the Court rejected any argument that "mere failure to assess is not a breach of the contract[] [because] breach can only be established if an insured suffered diminished value and State Farm refused to pay for that diminished value." Doc. 78 at 21. As noted then, "*Mabry* makes clear[] [that] breach in the Plaintiffs' failure to assess claim is established by the failure to assess, not by diminished value." *Id*. "*Mabry* holds that insurance companies have a duty to assess for diminished value and that when they fail to perform that assessment, their insureds have a remedy." *Id*. at 20. Indeed, the Georgia Supreme Court in *Mabry* explicitly noted that "[t]he trial court's order makes no specific finding on" "whether State Farm [Mutual Automobile Insurance Company] has breached its obligation to pay diminution in value to any persons," yet it upheld a class-wide injunction requiring State Farm Mutual Automobile Insurance Company to assess for diminished value. *Mabry*, 274 Ga. at 501, 556 S.E.2d at 118. "Try as it might, State Farm simply cannot work around *Mabry*." Doc. 78 at 20. State Farm would require the Plaintiffs to prove diminished value in order to obtain a declaration that they were entitled to have State Farm assess whether such diminished value existed. This makes no sense and turns *Mabry* on its head. It is hard to believe that State Farm is still confused about this. The Thompsons, and each and every other class member with a policy that covers diminished value, are entitled to an assessment for diminished value, provided that they can show that homes damaged by water can experience diminished value even though repaired. The Court turns to that issue.

According to the Plaintiffs, there is no genuine dispute of fact as to whether there is a possibility of diminished value in water damage claims because "State Farm, its executives, and its experts all agree that claims involving water damage have the potential to result in diminished value due to stigma, even though the physical damage has been repaired."  Doc. 138-1 at 8-9.

The Plaintiffs amply support this assertion.  State Farm's corporate designee admitted that some buyers might have a negative perception regarding properties that have suffered water damage, i.e., stigma.  Doc. 121-7 at 50:1-51:14, 69:4-7, 70:6-14.  State Farm's engineer expert, Maureen Davis, admitted: "[m]any people believe that water is wood's enemy;" "some people might believe that an event in a house experiences water damage will result in an adverse effect on the structure of the property;" "if someone believes that there's been some adverse effect on the structure of the home, that may impact the perception of the value of the property;" and some home buyers may "decide that they are just not even interested in dealing with the problem or the issue and . . . just move on and look at the next property."  Doc. 74 at 257:11-16, 258:5-18, 261:12-20.  One of State Farm's appraiser experts, Trevor Phillips, acknowledged that stigma associated with interior water leaks that flood a home could decrease the home's value.  Doc. 137-12 at 109:12-25, 131:18-132:10, 137:13-138:12.  Bruce Penn, another of State Farm's appraiser-experts, also concedes that even after repairs, a buyer may, in some instances, perceive a risk due to prior water damage or potential mold.  Doc. 137-9 at 54:17-55:10, 68:16-69:7, 196:6-12.

State Farm acknowledges its witnesses' concession "that one generally could not rule out the possibility that some person might perceive a stigma from previous water

damage." Doc. 149 at 17. However, State Farm argues that "the fact that there could be 'someone' who may perceive that a home is worth less does not mean the home actually is worth less," characterizing such a conclusion as being a mere theoretical possibility rather than a possibility supported by the evidence. *Id.* at 17-18. But the admitted potential for market devaluation due to stigma was clearly based on real world possibilities. If nothing else, this is made clear by the fact that, unlike a mere theoretical possibility, State Farm's witnesses admitted that the only way to eliminate this potential for diminished value due to stigma is to actually assess for it. For example, Trevor Phillips testified as follows:

> Q. Okay. Do you have some understanding as to whether that type of flooding of the home would have the potential to cause stigma?
> A. Once it's repaired?
> Q. Yes.
> A. Yeah, again, once it's repaired, I think, you know, again, it's a -- this is a market value issue, so you'd have to analyze --
> Q. Okay. Does it --
> A. -- actual transactions.
> Q. Okay. Does it, however, have the potential to cause stigma? I understand we have to do the market value to see if it actually did or how much it did.
> A. Uh-huh.
> Q. But does it have the potential, however, to cause stigma?
> A. Well, I would have to say without any market evidence it has the potential to have zero effect. But it also has the potential to cause stigma.
> Q. Okay. And that is why you would have to do the diminished value assessment to make that determination; correct?
> A. That's exactly right.

Doc. 138-1 at 22-23 (quoting Doc. 137-12 at 137:14-138:12).

State Farm offers testimony that tends to prove that most of the time there will be no diminished value when proper repairs are made. *See* Doc. 149 at 20 ("[M]ost insurance repairs do not diminish the value of property, but actually increase the value

of property." (quoting Doc. 137-8 at 2)). That could prove to be true, but it is irrelevant to the duty to assess. As the Court has already noted, in *Mabry*, the Georgia Supreme Court "did not find that in every case, or even in most cases, that a vehicle's value necessarily decreased as the result of physical damage to the vehicle. Rather, as the Georgia Supreme Court made clear when it affirmed the trial court, the finding simply was that 'the fact of physical damage resulting from an event covered by the policy *can* reduce the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function.'" Doc. 78 at 3 (quoting *Mabry*, 274 Ga. at 509, 556 S.E.2d at 123 (emphasis added)). In *Mabry*, this standard was met with, among other things, "documents from State Farm [Mutual Automobile Insurance Company] acknowledg[ing] that there is a common perception that a wrecked vehicle is worth less simply because it has been wrecked." *Id.* (quoting *Mabry*, 274 Ga. at 503, 556 S.E.2d at 119).

Here, there is evidence of a similar, though perhaps less common, perception of houses that have been damaged by water. Any difference between the evidence here and the evidence in *Mabry* is one of degree. But State Farm cannot create a question of fact by simply emphasizing this difference in degree. That difference, though likely to impact how assessments are performed and how often diminished value is found, simply does not impact State Farm's duty to assess.

Accordingly, there is no genuine dispute as to whether there is the sufficient possibility of diminished value arising from stigma in water damage loss claims. Accordingly, here, just as in *Mabry*, the second conclusion—the possibility of diminished value—has been satisfied beyond reasonable dispute by evidence from State Farm itself.

The third question is easily answered by examining the policies.  In *Mabry*, the Georgia Supreme Court held that State Farm Mutual Automobile Insurance Company had an affirmative duty to assess and adjust for each element of loss—including diminished value—notwithstanding its insured's failure to specifically raise each element of loss.  The Court's reasoning was simple—because "[n]othing in the [subject] insurance policy requires the insured to assert a right to recover any particular element of damage[,] State Farm [Mutual Automobile Insurance Company], not the insured[s], [had the duty] to determine all the elements of loss in each claim."  *Mabry*, 274 Ga. at 508-09, 556 S.E.2d at 123.  "If the policy does not require the insured to claim separately such items as damage to tires or damage to bodywork, it stands to reason that the policy does not require a separate claim for diminution in value."  *Id.*  The Plaintiffs assert that State Farm's homeowners' policies, like the automobile policies in *Mabry*, do not impose any obligation on the insureds to claim any particular element of loss.  Doc. 121-1 at 13.  Moreover, the Plaintiffs point out that the policies obligate State Farm to "adjust all losses with" its insureds, and State Farm's claims handling procedures require that when an insured claims a loss, State Farm has an obligation to "[e]xplain all relevant coverages," "[e]ncourage policyholders to report all losses and avail themselves of all benefits under their coverages," and "[d]iligently investigate the facts to determine if a claim is valid, reasonably evaluate the claim and act promptly in resolving the claim."  Doc. 129-1 at p. 5 ¶ 6, p. 6-7 ¶ 10.  State Farm does not contest this.  Accordingly, State Farm had an affirmative duty to assess and adjust for each element of covered loss—including diminished value—even if its insureds did not specifically claim diminished value.

In sum, the Court reaches the same three conclusions reached by the Georgia Supreme Court in *Mabry*. Accordingly, State Farm has a duty to assess for diminished value in water damage claims except as otherwise provided in this Order.

**D.    State Farm breached its duty to assess for diminished value.**

State Farm has not been assessing for diminished value as to any of its homeowners claims; rather, it has steadfastly maintained that its policies do not cover diminished value. It is beyond dispute that State Farm has no method or procedure for determining whether diminished value exists. *See, e.g.*, Doc. 138-1 at 15 (quoting Doc. 121-7 at 38:1-15, 39:1-4) (a State Farm corporate designee testifying to that effect); *see also* Doc. 149-1 at pp. 12-13 ¶ 13, pp. 14-16 ¶ 15, pp. 29-31 ¶ 17, pp. 31-37 ¶ 18, p. 37 ¶ 19, p. 38 ¶ 20 (other State Farm representatives testifying similarly). But this assessment is what *Mabry* requires. State Farm asserts that such an assessment is not necessary because, in its opinion, the need to assess for diminished value is obviated by its procedures for measuring the adequacy of repairs. Doc. 149 at 22. This simply ignores *Mabry*. Indeed, this argument, headed "State Farm Assessed Class Members' Homes for Diminished Value" (*id.* at 20), is not far from violating Rule 11.

State Farm correctly notes that *Mabry* does not require, as the Plaintiffs argue, a "formal appraisal by a licensed real-estate appraiser;" rather *Mabry* left it up to State Farm Mutual Automobile Insurance Company to "develop an appropriate methodology for making such evaluations." *Mabry*, 274 Ga. at 510, 556 S.E.2d at 124. But State Farm has not even been willing to recognize diminished value as a covered loss, let alone make a good faith assessment for diminished value as an element of its insureds' covered losses. Accordingly, State Farm has breached its duty to assess for diminished

value as to class members' losses under policies covering diminished value.

**E.    The Plaintiffs are entitled to an order requiring assessment, nothing more.**

The Plaintiffs assert that because State Farm breached its contractual duty to assess, they are entitled to recover monetary damages under the basic principle that they are entitled to the benefit of their bargain.  Doc. 121-1 at 15-16.  The Plaintiffs assert that they had a right to an assessment performed by a Georgia real estate appraiser, which, they note, costs $2,500.  Docs. 138-1 at 7; 144 at 7.

The Plaintiffs are not entitled to a monetary remedy.  *Mabry* makes very clear that State Farm's duty to assess is a claims handling procedure.  *Mabry* did not give the "insured the right to insist on any particular claims handling procedure," but rather "merely required that State Farm [Mutual Automobile Insurance Company] handle all elements of loss in each claim," by "develop[ing] an appropriate methodology for making such evaluations."  *Mabry*, 274 Ga. at 509-10, 556 S.E.2d at 123-24.  The Plaintiffs offer no authority for the proposition that they are entitled to a particular claims handling procedure, let alone damages for the cost to them of getting their own assessment.  What the Plaintiffs seek is far beyond *Mabry*.  And it is an extension of *Mabry* that the Court is unwilling to make.  The Plaintiffs are entitled to an assessment.  The question of the exact order of relief is not before the Court, but the Court's starting point is *Mabry*, so State Farm will be given the initial opportunity to develop an appropriate uniform methodology for making a good faith assessment for diminished value as to each covered claim.

**F.    With respect to any claims with a date of loss before January 22, 2013, genuine issues of material fact remain as to whether State Farm waived the contractual requirement to file suit within one year.**

The Plaintiffs' insurance policies required suits against State Farm to be "started within one year after the date of loss or damage." Doc. 121-4 at 41. The Plaintiffs filed this action on January 22, 2014. Doc. 1. State Farm argues that it is entitled to summary judgment for all claims with a date of loss before January 22, 2013. Doc. 125. The Plaintiffs argue that *they* are entitled to summary judgment on this issue because State Farm has, as a matter of law, waived the limitations provision by adjusting their claims without any assessment for or mention of diminished value. Doc. 124.

Waiver of a contractual right "may be inferred from actions, conduct, or a course of dealing." *Forsyth Cty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 630, 694 S.E.2d 102, 109 (2010) (citations omitted). In order for a factfinder to infer that a party has waived a contractual right, "all the attendant facts, taken together, must amount to an intentional relinquishment of a known right." *Id.* (citation omitted). If applying a limitation to an insurance contract would result in the forfeiture of a policy benefit, "the court will strictly construe the provision against the insurance company[,] and small circumstances will be sufficient to show a waiver by the company." *Gilbert v. Southern Trust Ins. Co.*, 252 Ga. App. 109, 111, 555 S.E.2d 69, 72 (2001) (citation omitted). "An insurance company may waive the contractual limitation provision 'where the company leads the insured by its actions to rely on its promise to pay, express or implied.'" *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 566, 569 S.E.2d 833, 835 (2002) (quoting *Georgia Farm Bureau Mut. Ins. Co. v. Mikell*, 126 Ga. App. 640, 642, 191 S.E.2d 557, 558 (1972)). Finally, waiver may be inferred where "the insurer never denie[s] liability

and [takes] actions (including issuing checks for payment) which represent[] that it intend[s] to pay the claim without suit." *Balboa Life & Cas., LLC v. Home Builders Fin., Inc.*, 304 Ga. App. 478, 481, 697 S.E.2d 240, 244 (2010).

As has been said many times, *Mabry* clearly established that in Georgia, diminished value is an element of "loss" unless "loss" is defined differently in the policy. And in *Royal Capital* the Georgia Supreme Court made clear that loss has a similar default meaning in insurance policies covering real property. These decisions had a profound impact in Georgia, and some insurers accepted the rulings and acknowledged that their policies covered diminished value. Others, such as State Farm, have not and have maintained that their policies do not cover diminished value. But clearly State Farm was on notice that Georgia courts had held that casualty policies do cover diminished value.

It is undisputed that State Farm has an internal policy of explaining relevant coverages to its insureds. Doc. 129-1 at p. 6-7 ¶ 10. And, as noted above, State Farm's homeowners insurance policies expressly obligated State Farm to "adjust all losses with [the insureds]." *Id.* at p. 5 ¶ 6. Though not expressly laid out in the record, the record assumes that State Farm has accepted liability for the Plaintiffs' claimed losses by making payments for repair and restoration. Yet, despite the language of the policy, State Farm's procedures, and the clear holdings of *Mabry* and *Royal Capital*, State Farm, the evidence suggests, had a practice and procedure of declining to mention, deny, or reserve its rights as to diminished value. Doc. 127-11 at 117:2-15, 119:24-120:3, 145:9-20, 146:24-147:8, 154:6-16. Accordingly, it appears that State Farm accepted coverage for and paid claims, communicated to its insureds what was

purported to be a full disclosure of their coverage, but omitted any mention of diminished value.

This case is unique. The Plaintiffs allege a broad scheme that affected thousands of insureds. Specifically, they have evidence suggesting that State Farm, particularly after *Royal Capital*, enacted a scheme to "sleep" the Plaintiffs' diminished value claims through the one-year limitations period. State Farm does not directly contest the existence of such a scheme. Instead, State Farm isolates each discrete element of the scheme the Plaintiffs allege and argues that element alone does not constitute waiver under Georgia law. State Farm then argues that there is "no evidence of waiver as to the Thompsons or any other class member" and accuses the Plaintiffs of "attempt[ing] to create a new theory of waiver based on State Farm's silence on diminished value." Doc. 139 at 1.

The Court disagrees. State Farm's actions must be taken as a whole, not in the piecemeal fashion State Farm advocates. So considered, the evidence is sufficient to permit a factfinder to infer that State Farm acted to avoid the consequences of *Mabry* and *Royal Capital*. Because this situation is unique, it is not surprising that it does not neatly fit with any one particular line of cases. But, contrary to State Farm's assertions, no new theory of waiver is crafted here. Rather, what is new is the distinct possibility that State Farm systematically hid from its insureds their rights, made clear after *Royal Capital*, to recover compensation for the diminished value of their damaged property.

State Farm's "actions . . . and conduct," when "taken together" and considered as a whole, may "amount to an intentional relinquishment of a known right." *Forsyth Cty.*, 303 Ga. App. at 630, 694 S.E.2d at 109-10 (citation omitted). This is especially so since

applying the limitation would result in the forfeiture of a policy benefit and therefore "small circumstances will be sufficient to show a waiver by the company." *Gilbert*, 252 Ga. App. at 111, 555 S.E.2d at 72 (citation omitted). Further, a jury could conclude that State Farm "le[d] the insured by its actions to rely on its promise to pay," and, having never denied liability, "took actions . . . which represented that it intended to pay the claim without suit." *Ogden*, 275 Ga. at 566, 569 S.E.2d at 835 (citation omitted); *Balboa*, 304 Ga. App. at 481, 697 S.E.2d at 244. Accordingly, a factfinder could find that State Farm has waived the one-year limitation, and summary judgment on the issue is improper.

State Farm's arguments to the contrary are unavailing. State Farm argues that *Ogden* applies to "suit[s] seeking only those payments that were already offered by the insurer." Doc. 139 at 5. State Farm quotes *Georgia Farm Bureau Mutual Insurance Company v. Pawlowski* for the proposition that cases like *Ogden* are limited to "dispute[s] [over] whether the insurance company could rely on the contractual limitation to avoid paying an amount it had already conceded that it owed." Doc. 131 at 18 (quoting *Pawlowski*, 284 Ga. App. 183, 185, 643 S.E.2d 239, 241-42 (2007)). But in *Pawlowski*, the insurer did not accept and purport to adjust the entire loss of the insured; the insurer made a settlement offer, which was rejected, and then did nothing. *See Pawlowski*, 284 Ga. App. at 185, 643 S.E.2d at 242 ("Georgia Farm Bureau, on the other hand, has not conceded that it owes the Pawlowskis anything more than the approximately $7,000 that it offered them in May 2003 and that they rejected."). *Willis v. Allstate Ins. Co.*, upon which State Farm also relies, is similarly distinguishable; as State Farm notes, in *Willis*, "the insurer never agreed the claimed losses were covered under

the policy [or] . . . made any payments for those losses." Doc. 139 at 6 (citing *Willis*, 334 Ga. App. 540, 543-44, 779 S.E.2d 744, 747 (2015)).  Neither case forecloses the possibility that an insurer's acceptance of coverage for a loss and corresponding payment on account of the loss, without reservation, could, depending on the facts, serve as a concession that the insurance company owes payment for each element of that loss.

State Farm also equates its conduct in accepting and paying claims with acts which, pursuant to O.C.G.A. § 33-24-40, do not constitute a "waiver of any provision of a policy or of any defense of the insurer under the policy."[7]  Doc. 131 at 13-14 (quoting O.C.G.A. § 33-24-40).  But O.C.G.A. § 33-24-40 creates no waiver exception or exemption for accepting a claim as covered or making payments on the claim. Similarly, State Farm is misplaced in its reliance for the same proposition on *Thornton v. Georgia Farm Bureau Mutual Insurance Company*, 297 Ga. App. 132, 676 S.E.2d 814 (2009), *aff'd*, 287 Ga. 379, 695 S.E.2d 642 (2010).  In *Thornton*, the insurer made a series of payments to the insured, but the payments were subject to nonwaiver agreements and notices of its reservation of rights.  *Thornton*, 297 Ga. App. 132 at 133-34, 676 S.E.2d at 816-17.  Here, there is no evidence that State Farm took such steps to preserve its contractual right.

State Farm next argues that "[a]n insurer's 'silence' in failing to explicitly deny coverage—as to an entire claim or any part of a claim—simply does not waive a suit-limitation."  Doc. 139 at 7.  But State Farm purported to fully explain coverage to and

---

[7] Those acts are: "(1) Acknowledgment of the receipt of notice of loss or claim under the policy; (2) Furnishing forms for reporting a loss or claim, for giving information relative to the loss or claim, or for making proof of loss or receiving or acknowledging receipt of any forms or proofs completed or uncompleted; or (3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any loss or claim."  O.C.G.A. § 33-24-40.

adjust the classes' claims without mentioning diminished value, and a failure to act or speak can constitute waiver in such circumstances:

> Ordinarily, mere silence is not sufficient to establish a waiver unless there is an obligation to speak. [However,] [a]though a party may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure.

*Jordan v. Flynt*, 240 Ga. 359, 366, 240 S.E.2d 858, 863 (1977) (quotation marks and citations omitted). In *Jordan*, a party failed to mention certain then-existing grounds of default in a letter of default. *Id*. The Georgia Supreme Court concluded that a jury could find that this "conduct succeeded in lulling the [other party] into a sense of security to his detriment," thus waiving the defaults. *Id*.

State Farm had a policy of explaining coverage to their insureds. Accordingly, State Farm had to "make a full and fair disclosure" of the insureds' coverages, and it was "bound not only to state truly what [was told], but also not to suppress or conceal any facts within [its] knowledge which materially qualify those stated." *See id*. The facts here support the possible conclusion that State Farm failed to disclose facts that it knew should have been disclosed in its explanation of coverage. Even absent an incomplete verbal statement, a Georgia insurer may waive the limitations period by affirmatively acting to conceal the limitations period or the grounds for bringing suit. *See Lanier v. Coastal States Life Ins. Co.*, 106 Ga. App. 802, 804-05, 128 S.E.2d 550, 551-52 (1962) (holding that waiver existed when (1) the insurer refused the insured's request for a copy of the policy since the insurer's refusal concealed the contract's two-year limitation on suit, and (2) the insured had done all that could "reasonably be required of him under

the circumstances"). Again, a jury could conclude that State Farm paid the Plaintiffs' repair costs and purposely failed to mention diminished value in order to "sleep" its insureds' diminished value claims through the one-year window for suit by lulling them into a sense of security that their claim was fully paid. On this record, the Court cannot conclude as a matter of law that it was the Plaintiffs' negligence rather than State Farm's concealment that caused the Plaintiffs' failure to timely sue.

State Farm next argues that its "'silence' about diminished value was an implicit denial of coverage, and courts refuse to find waiver in such circumstances." Doc. 131 at 15. But the Court disagrees, and the cases State Farm relies on—*Pawlowski* and *Suntrust*—do not apply. In both, (1) the insurer and the insured exchanged settlement offers within the limitations period, and (2) the insured allowed the limitations period to run without filing suit despite full possession of all information necessary to timely file. *Pawlowski*, 284 Ga. App. at 184, 643 S.E.2d at 241; *Suntrust Mortg., Inc. v. Ga. Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 41, 416 S.E.2d 322, 323 (1992). Here, State Farm allegedly accepted the claims as covered and made repair payments on the claims. In the absence of any discussion of diminished value, such payments do not constitute implicit denial of coverage of diminished value.

State Farm also argues that it "could not have 'denied' any claims for diminished value because no claims for diminished value were made with the vast majority of the claims at issue." Doc. 131 at 21. But, as discussed above, diminished value is an element of loss for which State Farm has a duty to assess even when an insured does not expressly claim diminished value. In that, *Mabry* and *Royal Capital* are crystal clear.

Perhaps State Farm's arguments would carry more weight in the typical case of a single insured missing a deadline to file suit. But that is not the situation here. Rather, the evidence suggests that State Farm, in response to *Mabry* and *Royal Capital*, affirmatively implemented a broad scheme to avoid paying diminished value, a scheme that involved, essentially, hiding from insureds information about their coverage for diminished value.[8]

However, the facts are far from undisputed, and the Court cannot say as a matter of law whether State Farm waived the one-year limitation provision, particularly as to claims adjusted before *Royal Capital*. Because genuine issues of fact remain with regard to whether State Farm waived the one-year limitations provision, neither party is entitled to summary judgment. *See Balboa*, 304 Ga. App. at 481, 697 S.E.2d at 243-44 (holding that, when evidence suggested that the insurer lulled the insured into a belief that the limitation was waived, the trial court (1) correctly denied the insurer's motion for summary judgment claiming the insured's action was barred by a one-year limitation, but (2) erred to the extent it ruled that the one-year provision was waived as a matter of law since an issue of fact was presented).

### III. CONCLUSION

In conclusion, the Plaintiffs' motions seeking partial summary judgment (Docs. 121; 123; 124; 138) are **GRANTED IN PART** and **DENIED IN PART**. Policies issued prior to November 1, 2013 cover diminished value (even if they were renewed with FE-5621 and its accompanying notice), and State Farm breached its duty to assess for

---

[8] The Court notes that *Royal Capital* was not published until May 29, 2012. Clearly, State Farm was on notice following *Royal Capital* that its policies covered diminished value. Whether State Farm was on notice following *Mabry*, the Court need not decide here, because State Farm has not moved for summary judgment on "pre-*Royal Capital*" claims.

diminished value as to those policies. However, FE-5621 was effective to eliminate coverage for diminished value as to new policies issued with the endorsement. Finally, the Plaintiffs are not entitled to recover monetary damages.

State Farm's motion seeking summary judgment because the "class members' homeowners policies do not cover, and thus include no obligation to assess for, diminished value" (Doc. 126) is accordingly **DENIED**. State Farm's motion for summary judgment on the ground that the Thompsons have suffered no diminished value (Doc. 136) is also **DENIED**.

The parties' cross-motions (Docs. 124; 125) as to whether State Farm waived the contractual limitations provision in the policies with respect to any claims with a date of loss before January 22, 2013 are **DENIED**; there are genuine disputes of material fact as to whether State Farm waived the one-year limitation-on-suit condition contained in the policies.

Accordingly, there appear to be two remaining issues in this action: (1) the factual question of waiver, and (2) the exact contours of the injunction or declaration to which the Plaintiffs are entitled. The Court will convene a conference to address these issues.

**SO ORDERED**, this 31st day of August, 2017.

s/ Marc. T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT